1

LAW OFFICES OF
**WALKUP, MELODIA, KELLY & SCHOENBERGER**
A PROFESSIONAL CORPORATION

2

650 CALIFORNIA STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94108-2615
T: (415) 981-7210 · F: (415) 391-6965

3

4  Michael A. Kelly (State Bar #71460)
   Doris Cheng (State Bar #197731)

5

6  Scott A. Powell (*pro hac vice*)
   Bruce J. McKee (*pro hac vice*)
   Christopher S. Randolph, Jr. (*pro hac vice*)

7  Tempe D. Smith (*pro hac vice*)
   HARE, WYNN, NEWELL & NEWTON, LLP

8  2025 Third Avenue North, 8th Floor
   Birmingham, AL 35203

9

   Jason Earley (*pro hac vice*)
10 HARE, WYNN, NEWELL & NEWTON, LLP
   2226 Cottondale Lane, Suite 210

11 Little Rock, AR 72202

12 David G. Hymer (*pro hac vice*)
   Linda A. Friedman (*pro hac vice*)

13 Michael R. Pennington (*pro hac vice*)
   Ellen Pressley Proctor (*pro hac vice*)

14 BRADLEY ARANT BOULT CUMMINGS LLP
   One Federal Place

15 1819 Fifth Avenue North
   Birmingham, AL 35203

16

17 **ATTORNEYS FOR PLAINTIFF**
   **MICHEL KECK**

18            UNITED STATES DISTRICT COURT

19          NORTHERN DISTRICT OF CALIFORNIA

20               SAN JOSE DIVISION

21 MICHEL KECK, on behalf of herself and      Case No. 5:17-cv-05672-BLF
   others similarly situated,
22                                             **PLAINTIFF'S RESPONSE TO**
                                               **MOTION TO DISMISS**
   Plaintiff,                                  **(REDACTED)**
23
   v.                                          Hearing date:  June 14, 2018
24                                             Time:          9:00 AM
   ALIBABA.COM, INC., et al.,                  Judge:         Hon. Beth Labson Freeman
25                                             Trial date:    October 4, 2021
   Defendants.
26

27

28

1

2

## **TABLE OF CONTENTS**

3    I.        INTRODUCTION ................................................................................................ 1

4    II.       BACKGROUND ................................................................................................. 2

5        A.    The Alibaba Websites are part of AGHL's "ecosystem." ................................... 2

6        B.    AGHL and Taobao have sought to expand their U.S. presence. ........................ 3

7        C.    AGHL has addressed intellectual property infringement on the Alibaba Websites .............. 4

8    III.      ARGUMENT ...................................................................................................... 5

9        A.    AGHL and Taobao Are Subject to Personal Jurisdiction in California. ................ 5

10           1.   Keck need make only a prima facie showing that AGHL and Taobao expressly aimed
                  conduct to the forum and that Keck's claims arise from those contacts ...................... 5

11               a.   The "purposeful direction" standard. ........................................................... 5

12               b.   The standard for whether claims arise out of online contacts. ........................ 6

13           2.   Taobao is subject to jurisdiction under the California long-arm statute. ..................... 6

14               a.   Taobao expressly aimed conduct toward California. ....................................... 6

15               b.   Keck's claims arise out of Taobao's California contacts. ................................ 8

16           3.   Alternatively, Taobao is subject to jurisdiction under Rule 4(k)(2). ......................... 10

                 a.   Taobao has expressly aimed conduct toward the United States. ...................... 10

17               b.   Keck's injury arises from Taobao's contacts with the United States. ................ 12

18               c.   Taobao's arguments fail. ............................................................................. 13

                 (1) Taobao's argument about a purported language barrier fails. ......................... 13

19               (2) Taobao's argument about the percentage of Taobao Marketplace sales to the U.S.
                     fails. ..................................................................................................... 13

20
                 (3) Taobao has admitted that it operates Taobao Marketplace. ........................... 14

21               (4) *Atmos Nation* is distinguishable. ............................................................. 16

22           4.   AGHL Is Subject to Specific Personal Jurisdiction. ............................................. 16

                 a.   AGHL has expressly aimed conduct toward California and the U.S. ................. 16

23               (1) The forum contacts of AGHL's agents on intellectual property issues establish
                     jurisdiction ............................................................................................ 16

24
                 (2) AGHL has represented it operates the Alibaba Websites. .............................. 19

25               b.   Keck's claims arise out of AGHL's forum contacts. ..................................... 20

26               c.   The Florida and Missouri cases AGHL cites are distinguishable ..................... 20

27       B.    Keck Alleged Claims Against AGHL, Alibaba Group (U.S.), and Alibaba.com, Inc. ....... 21

     IV.       CONCLUSION ................................................................................................. 25

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*A&M Records, Inc. v. Napster, Inc.,*
  239 F.3d 1004 (9th Cir. 2001) ......................................................................... 22, 23, 24

4

5

*Adobe Sys., Inc. v. Cardinal Camera Video Ctr., Inc.,*
  2012 WL 5834135 (N.D. Cal. Oct. 7, 2015) ......................................................... 14

6

*ALS Scan, Inc. v. CloudFlare, Inc.,*
  2017 WL 1520444 (C.D. Cal. Feb. 16, 2017) ....................................................... 24

7

8

*AMA Multimedia, LLC v. Sagan Ltd.,*
  2016 WL 5946051 (D. Ariz. Oct. 13, 2016) ......................................................... 11

9

*Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal,,*
  480 U.S. 102 (1987) ....................................................................................... 18

10

11

*Atmos Nation, LLC v. Alibaba Group Holding, Ltd.,*
  No. 0:15-cv-62104 (S.D. Fla. April 26, 2017) ................................................. 16, 21

12

*Brayton Purcell, LLP v. Recordon & Recordon,*
  606 F.3d 1124 (9th Cir. 2010) .......................................................................... 9

13

14

*Bright Imperial Ltd. v. RT MediaSols., S.R.O.,*
  2012 WL 1831536 (E.D. Va. May 18, 2012) ......................................................... 13

15

*Broadcast Music, Inc. v. Meadowlake, Ltd.,*
  754 F.3d 353 (6th Cir. 2014) ........................................................................... 22

16

17

*CD Dist., LLC v. New Sensor,*
  380 F.3d 1107 (9th Cir. 2004) ........................................................................... 5

18

*Chanel, Inc. v. Yang,*
  2013 WL 5755217 (N.D. Cal. Oct. 21, 2013) ....................................................... 12

19

20

*Chloe SAS v. Sawabeh Infor. Servs. Co.,*
  2012 WL 7679386  (C.D. Cal. May 3, 2012) ...................................................... 8, 13

21

*CollegeSource, Inc. v. AcademyOne, Inc.,*
  653 F.3d 1066 (9th Cir. 2011) ..................................................................... 12, 15

22

23

*Collins v. Easynews, Inc.,*
  2006 WL 8433059 (W.D. Tex. Sept. 12, 2006) ..................................................... 14

24

*Columbia Pictures Indus., Inc. v. Redd Horne, Inc.,*
  749 F.2d 154 (3d Cir. 1984) ........................................................................... 24

25

26

*Cybernet Entm't., LLC v. IG Media, Inc.,*
  2012 WL 12874297 (D. Ariz. Nov. 30, 2012) ....................................................... 12

27

*D.light Design, Inc. v. Boxin Solar Co., Ltd.,*
  2015 WL 7731781 (N.D. Cal. Dec. 1, 2015) ......................................................... 6

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

ii

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014) .......................................................................................... 15, 18

*Dazo v. Globe Airport Sec. Servs.,*
  295 F.3d 934 (9th Cir. 2002) ....................................................................................... 17

*DEX Sys., Inc. v. Deutsche Post AG,*
  --- F. App'x ---, 2018 WL 1280917 (9th Cir. 2018) ............................................ 11

*Facebook, Inc. v. Pedersen,*
  868 F. Supp. 2d 953 (N.D. Cal. 2012) ..................................................................... 14

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
  76 F.3d 259 (9th Cir. 1996) .................................................................................. 22, 24

*Friedman v. Zimmer,*
  2015 WL 6164787 (C.D. Cal. July 10, 2015) ...................................................... 1, 22

*Graduate Mgmt. Ass'n Council v. Raju,*
  241 F. Supp. 2d 589 (E.D. Va. 2003) .................................................................. 11

*Helicopter Trans. Servs., LLC v. Sikorsky Aircraft Corp.,*
  253 F. Supp. 3d 1115 (D. Or. 2017) ..................................................................... 19

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.,*
  485 F.3d 450 (9th Cir. 2007) ................................................................................ 10

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945) ............................................................................................... 18

*Intercom Ventures, LLC v. FasTV, Inc.,*
  2013 WL 2357621 (N.D. Ill. May 28, 2013) ....................................................... 24

*Ismile Dental Prods., Inc. v. Smile Dental Supply, Inc.,*
  2017 WL 1153110 (E.D. Cal. March 28, 2017) .................................................... 8

*Keeton v. Hustler Magazine, Inc.,*
  465 U.S. 770 (1984) ............................................................................................ 8, 14

*Life360, Inc. v. Advanced Grp. Info. Sys., Inc.,*
  2015 WL 5612008 (N.D. Cal. Sept. 21, 2015) ....................................................... 9

*LiveCareer, Ltd. v. Su Jia Techs., Ltd.,*
  2015 WL 1448505 (N.D. Cal. March 31, 2015) ........................................... 7, 10, 11

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.,*
  658 F.3d 936 (9th Cir. 2011) ............................................................................. 21, 24

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
  519 F.3d 1025, 1034 (9th Cir. 2008) .................................................................... 25

*Martensen v. Koch,*
  942 F. Supp. 2d 983 (N.D. Cal. 2013) .................................................................. 10

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981–7210

iii

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011)............................................................................ passim

*Myers v. Bennett Law Offices*,
  238 F.3d 1068 (9th Cir. 2001) .................................................................... 5, 18

*Naranjo v. Yum! Brands, Inc.*,
  2009 WL 10692674 (C.D. Cal. Jan. 20, 2009) ................................................. 19

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007)..................................................................... 9, 24

*Perfect 10, Inc. v. Ocom B.V.*,
  2014 WL 12591631 (C.D. Cal. April 28, 2014 .............................................. 6, 7

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007)............................................................................ 25

*Rosen v. Masterpiece Mkt. Grp., LLC*,
  2016 WL 7444688 (C.D. Cal. Nov. 29, 2016) ............................................... 7, 9

*Shuffle Master, Inc. v. Kardwell Int'l, Inc.*,
  2013 WL 12126745 (C.D. Cal. April 23, 2013) ........................................... 7, 12

*Sony BMG Music Ent. v. Tenenbaum*,
  660 F.3d 487 (1st Cir. 2011) ............................................................................. 9

*UMG Recordings, Inc. v. Bertelsmann AG*, 222
  F.R.D. 408 (N.D. Cal. 2004) ........................................................................... 22

*United States v. Agne*,
  214 F.3d 47 (1st Cir. 2000) .............................................................................. 17

*Vanderbilt Mortgage & Fin., Inc. v. Flores*,
  692 F.3d 358 (5th Cir. 2012) ............................................................................ 19

*Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*,
  2012 WL 4755041 (N.D. Cal. Oct. 4, 2012) .................................................... 14

*Vista v. USPlabs, LLC*,
  2014 WL 5507648 (N.D. Cal. Oct. 30, 2014) ............................................... 5, 16

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014) ........................................................................... 6, 9, 18

*Williams v. Yamaha Motor Co., Ltd.*,
  851 F.3d 1015 (9th Cir. 2017) .......................................................................... 18

*Yelp, Inc. v. Catron*,
  2014 WL 12776735 (N.D. Cal. Sept. 8, 2014) ................................................... 5

**Statutes**

15 U.S.C. § 1058 ............................................................................................ 11

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981–7210

iv

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

15 U.S.C. § 1127 ........................................................................................... 11

Cal. Code Civ. Pro. § 410.10.......................................................................... 5, 21

**Rules of Civil Procedure**

Fed. R. Civ. P. 12 .......................................................................... passim

Fed. R. Civ. P. 4 ........................................................................... 5, 10, 21

**Other Authorities**

*Restatement (Second) of Agency* ................................................... 17

*Restatement (Third) of Agency* ..................................................... 18

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981–7210

v

# I.    INTRODUCTION

Defendant Alibaba Group Holding, Ltd. ("AGHL") oversees a self-described e-commerce "ecosystem" that includes the three online shopping platforms Alibaba.com, AliExpress.com, and Taobao Marketplace (collectively, "Alibaba Websites"). AGHL's subsidiary, Defendant Taobao China Holding, Ltd. ("Taobao"), admits in its motion papers that it "operates" the Taobao Marketplace website and that it is the "operating entity for the business outside of China of Taobao Marketplace." *See* Motion to Dismiss, ECF No. 152 ("Mot.") at 3, 17. Plaintiff Michel Keck—like many other copyright owners—found her copyrighted works displayed and offered for sale on all three Alibaba Websites. Keck asserts copyright and trademark infringement claims against AGHL, Taobao, and AGHL subsidiaries Alibaba Group (U.S.) and Alibaba.com, Inc.

AGHL and Taobao seek dismissal for lack of personal jurisdiction. To defeat that motion, Keck only needs to make prima facie showing that AGHL and Taobao expressly aimed conduct toward the forum (either California or the U.S. as a whole) and that her injuries arise from those forum contacts. *See* Section III.A.1 *infra*.  Keck's complaint and the evidence submitted herewith easily chin that bar. Taobao Marketplace lists prices (including prices for copies of Keck's works) in U.S. dollars, is marketed at events in California and elsewhere in the U.S., provides U.S.-specific shipping instructions, relies on services provided by California-based affiliates, uses content delivery networks ("CDNs") in California and elsewhere in the U.S. to speed operation of its website in the U.S.—and even provides an American flag on some webpages when viewed in the U.S. Taobao's efforts to expand its business in the U.S. have been successful. Taobao Marketplace generates **Redacted** in annual sales to U.S. consumers and its website, Taobao.com, is the 168th most-visited website in the U.S. with **Redacted** of unique visitors in the US each year. *See* Section II *infra*.  As a result of Taobao's operation of its website, Keck was harmed by copyright and trademark infringement. This court has jurisdiction of Taobao.

Similarly, AGHL's contacts with the forum establish jurisdiction. Amid negative publicity about rampant infringement of intellectual property rights on the Alibaba Websites, AGHL appointed a U.S.-based agent—who reports directly to the president of AGHL—to lead a "Global IP" team.  Keck sought help from Global IP team members after she discovered that her works were

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981–7210

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

1  being infringed on the Alibaba Websites, but the infringement nonetheless persisted. AGHL has

2  further represented that it takes an active role in developing the "ecosystem" and that AGHL and its

3  subsidiaries jointly operate the Alibaba Websites. AGHL also uses U.S. law to protect its *own*

4  intellectual property rights by registering trademarks in the U.S. and suing in the U.S. to protect

5  those trademarks.  Keck's injuries arise from AGHL's involvement in operating the Alibaba

6  Websites and its failure to properly police IP rights on those ecommerce platforms. This Court has

7  jurisdiction of AGHL.

8      AGHL, Alibaba Group (U.S.), and Alibaba.com, Inc. also seek dismissal under Rule

9  12(b)(6), but Keck sufficiently alleged claims against them. The Motion to Dismiss should be denied

10  in its entirety.

11                      **II.     BACKGROUND**

12      Michel Keck is a full-time artist who owns registered U.S. copyrights for dozens of her

13  works and a U.S. trademark registration for her signature (which she places on her works). Compl.

14  ¶¶ 146, 150, 153. Keck has identified hundreds of listings on the Alibaba Websites where

15  unauthorized copies of her artwork were displayed and offered for sale. *See, e.g.*, Compl. ¶¶1-15.

16  Keck is far from the only victim of intellectual property theft on those websites—the U.S. Trade

17  Representative has repeatedly named Alibaba.com and Taobao.com to its annual list of "Notorious

18  Markets." Compl. ¶¶ 137, 142; Response to Motion to Dismiss Exhibit ("Ex.") 2 at 20.

19  **A.     The Alibaba Websites are part of AGHL's "ecosystem."**

20      The Alibaba Websites are part of AGHL's "ecosystem."  Compl. ¶ 10. Taobao operates

21  Taobao Marketplace, and Alibaba.com Hong Kong, Ltd. operates Alibaba.com and

22  AliExpress.com—both English-language shopping platforms that count the U.S. among their top

23  markets.  Compl. ¶¶ 7, 106, 112; Mot. at 3. As the term "ecosystem" connotes, AGHL and its

24  subsidiaries are closely intertwined. AGHL has explained that "[m]uch of our effort, time and

25  energy is spent on initiatives that are for the greater good of the ecosystem and on balancing the

26  interests of its participants. We feel a strong responsibility for the continued development of the

27  ecosystem and we take ownership in this development." Compl. ¶ 128; Ex. 3 at 60.  Consistent with

28  that responsibility, AGHL's "officers and directors are involved in setting certain policies regarding

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

2

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

1  the development, promotion, and operation of various online platforms," including the Alibaba

2  Websites. Compl. ¶ 20.  For example, AGHL's Chief Platform Governance Officer leads a

3  department "responsible for marketplace rules and regulations, intellectual property protection and

4  the anti-counterfeiting programs for all of Alibaba's marketplaces." Ex. 3 at 165; Ex. 4 at 11.

5  **B.      AGHL and Taobao have sought to expand their U.S. presence.**

6       AGHL was established in China but, consistent with its stated mission to "make it easy to

7  do business anywhere," AGHL has taken aggressive efforts to expand into the United States.  Ex.

8  at 57, Compl. ¶¶ 10, 192. AGHL, for instance, operates an English-language website (alizila.com)

9  that promotes the Alibaba Websites and the Alibaba brand to Americans. Ex. 5; Ex. 6 at 23, 30-31.

10 Through alizila.com, AGHL extensively reports on events like "Alibaba's Gateway '17"

11 conference, (Ex. 6 at 54, 56) an event hosted in Detroit in June 2017 where attendees could

12 "[c]onnect with Alibaba executives and their e-commerce, finance, sourcing and logistics partners"

13 (Ex. 7 at 1), attend sessions focusing specifically on Taobao Marketplace or Alibaba.com (Ex. 7 at

14 3), and listen to remarks from top AGHL executives. *Compare* Ex. 7 at 1 *with* Ex. 3 at 165. Alizila

15 similarly reported on AGHL chairman Jack Ma's 2017 pledge to President Trump that "Alibaba . .

16 . would create one million jobs in the U.S. in five years." Ex. 31 at 1.

17      The Alibaba Websites are designed to attract U.S. consumers. On Taobao Marketplace,

18 prices for many items—including unauthorized copies of Keck's artwork—are provided in U.S.

19 dollars, and shoppers may pay for purchases with Visa or MasterCard. Ex. 8 at 17-18; Ex. 9 at 6-8;

20 Ex. 10. Taobao Marketplace also provides merchants instructions for shipping merchandise to

21 buyers in the U.S. Ex. 11 at 37; Ex. 12; Ex. 13; Ex. 30 ¶ 18. Many product listings—again, including

22 listings for unauthorized copies of Keck's artwork—say that the listed product may be shipped to

23 the U.S. Ex. 34, 34.1.  *See* Ex. 8 at 17. Some pages in Taobao Marketplace, when accessed from the

24 U.S., display the words "United States" or an American flag at the top of the webpage. Compl. ¶

25 118; Ex. 11 at 23, 25, 27.

26      But efforts to expand Taobao Marketplace's reach in the United States go beyond U.S.-

27 directed web content. To allow Taobao Marketplace to run faster in the U.S., Taobao Marketplace

28 relies on content delivery networks ("CDNs") located at seven sites in the U.S. (including one in

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

3

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

California) to cache images and other information associated with product listings viewed by U.S. visitors. Compl. ¶ 115; Ex. 30 ¶¶ 13-15. California-based affiliates of Taobao further provide services related to operating Taobao Marketplace. Compl. ¶ 102. Also, U.S.-specific marketing efforts—such as the Taobao Global U.S. Merchants Network and special Taobao-focused sessions at Gateway '17—help promote the Taobao Marketplace in the U.S. Ex. 7; Ex. 14.

Taobao Marketplace is the 168th most popular website in the U.S., receiving millions of unique visitors from the United States each month. Compl. ¶¶ 116, 131. The total unique IP addresses that visited Taobao Marketplace from the United States was **Redacted** in 2014; **Redacted** in 2015; **Redacted** in 2016; and **Redacted** in 2017. Ex. 30 ¶16.  In 2017, the gross merchandise value of items sold on Taobao Marketplace and shipped to the United States totaled **Redacted**– with **Redacted** shipped to California addresses alone. Ex. 30 ¶¶ 21-22. Amid this significant amount of U.S. business, AGHL recently filed with the U.S. Trademark Office papers to maintain the U.S. trademark registration for "Taobao." Ex. 11.

## C.   AGHL has addressed intellectual property infringement on the Alibaba Websites.

Widespread infringement of Americans' intellectual property rights on the Alibaba Websites has led to bad publicity for AGHL and Taobao. Compl. ¶ 138. In response, AGHL announced the appointment of Matthew Bassiur, who works in California, as "Vice President, Head of Global Intellectual Property Enforcement." Ex. 15 at 1; Compl. ¶¶ 15, 225. Other individuals have joined Bassiur's Global IP team, including Daniel Dougherty, who also works in California (Compl. ¶ 227), and Xinghao Wang, who is based in the U.S. Compl. ¶ 215. The Global IP team—according to a submission to the U.S. Trade Representative—deals with "anti-counterfeiting and intellectual property rights protection efforts." Ex. 4 at 12. That same submission said that Bassiur "reports directly" to AGHL President Michael Evans. Ex. 4 at 11.

For several months, Keck e-mailed Bassiur, Wang, and Dougherty about the rampant infringement of her works, even providing them links to infringing listings on the Alibaba Websites. *See, e.g.*, Compl. ¶¶ 253-54. Dougherty responded on Bassiur's behalf to e-mails Keck sent Bassiur in late 2016, and Keck continued communications with Dougherty in 2017. Compl. ¶¶ 227, 246, 248-49. Keck also exchanged emails with Wang. Compl. ¶¶ 216-18. Despite Keck's efforts, the

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1  infringement of her copyrights and trademark persisted.

2  **III.    ARGUMENT**

3  Keck first addresses Taobao's and AGHL's personal jurisdiction arguments and then

4  addresses the Rule 12(b)(6) arguments.

5  **A.    AGHL and Taobao Are Subject to Personal Jurisdiction in California.**

6  The unchallenged allegations in the Complaint and evidence submitted with this brief

7  establish a prima facie showing that AGHL and Taobao are subject to personal jurisdiction in this

8  forum under either the California long-arm statute, Cal. Code Civ. Pro. § 410.10, or Fed. R. Civ. P.

9  4(k)(2).

10  **1.    Keck need make only a prima facie showing that AGHL and Taobao expressly**

11  **aimed conduct to the forum and that Keck's claims arise from those contacts.**

12  When a motion to dismiss is presented prior to a trial or evidentiary hearing, "the plaintiff

13  need only make a prima facie showing that personal jurisdiction exists." *Vista v. USPlabs, LLC*,

14  2014 WL 5507648 (N.D. Cal. Oct. 30, 2014) (Freeman, J.); *Myers v. Bennett Law Offices*, 238 F.3d

15  1068, 1071 (9th Cir. 2001) (plaintiff submitting discovery materials need only make a prima facie

16  showing of personal jurisdiction). At this stage, "[t]he court accepts as true the complaint's

17  uncontroverted factual allegations and resolves any factual conflicts in the plaintiff's favor." *Vista*,

18  2014 WL 5507648, at *1; *CD Dist., LLC v. New Sensor*, 380 F.3d 1107, 1110 (9th Cir. 2004) .

19  In a personal jurisdiction analysis, "[t]ort claims and tort-like claims—including intellectual

20  property claims—are analyzed under the purposeful direction concept." *Yelp, Inc. v. Catron*, 2014

21  WL 12776735, at *3 (N.D. Cal. Sept. 8, 2014). Under that framework, due process is satisfied if (1)

22  the defendant "purposefully directed" conduct toward the forum, (2) the plaintiff's claim "arises out

23  of or relates to" that conduct, and (3) the defendant fails to set forth a "compelling case" on why the

24  exercise of jurisdiction would be unreasonable. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d

25  1218, 1227-28 (9th Cir. 2011). Only the first two prongs of this test are contested here—neither

26  AGHL nor Taobao argues that "compelling" circumstances would justify dismissal if the first two

27  prongs are satisfied.

28  **a.    The "purposeful direction" standard.**

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

5

Conduct is "purposefully directed" to the forum if it is (1) an intentional act, (2) expressly aimed at the forum, (3) that causes harm the defendant knows is likely to be suffered in the forum. *Mavrix,* 647 F.3d. at 1228. AGHL and Taobao do not dispute that the first and third elements of the purposeful direction test are satisfied – and with good reason. It is well-established that infringement claims satisfy the "intentional act" element. *See id.* at 1229; *Perfect 10, Inc. v. Ocom B.V.*, 2014 WL 12591631 at *4 & n.3 (C.D. Cal. April 28, 2014). The third element of the purposeful direction test is satisfied if the defendant's conduct is aimed at the plaintiff's home or where the plaintiff does business. *Mavrix*, 647 F.3d at 1231. Keck is an American artist who sells her artwork in California and elsewhere in the U.S., and the defendants knew she resided in the United States because she provided her address in the takedown requests she submitted. Compl. ¶¶ 155, 222. Thus, the only question for this Court to decide in determining purposeful direction is whether AGHL and Taobao expressly aimed conduct at the forum.

A plaintiff satisfies the "express aiming" requirement by showing the violation of intellectual property rights on a website together with "something more—conduct directly targeting the forum." *Mavrix*, 647 F.3d at 1229. Courts looking at whether there is "something more" consider factors including "the interactivity of the defendant's website;" "the geographic scope of the defendant's commercial ambitions;" whether the defendant's online activity was "part of [the defendant's] exploitation of the [forum's] market for [the defendant's] own commercial gain;" and the size of the website's userbase in the forum. *Id.* at 1229-30. This analysis continues to apply after *Walden v. Fiore*, 134 S. Ct. 1115 (2014) because it looks at the defendant's forum-directed conduct, not the defendant's contact with the plaintiff unconnected to the forum. *See D.light Design, Inc. v. Boxin Solar Co., Ltd.,* 2015 WL 7731781, at *2 (N.D. Cal. Dec. 1, 2015); *see also Walden,* 134 S. Ct. at 1125 n.9.

### b.      The standard for whether claims arise out of online contacts.

An infringement claim "arises out of" online contacts when the infringing material was posted on a website that is "accessible to users in the forum state." *Mavrix*, 647 F.3d at 1228.

### 2.      Taobao is subject to jurisdiction under the California long-arm statute.

### a.      Taobao expressly aimed conduct toward California.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981–7210

1    Taobao directs much of its argument to a strawman by contending that Keck alleged "only

2   that Taobao Marketplace hosted infringing listings viewable from California and the United States."

3   Mot. at 7.  But as already shown, Keck alleges far more than that. Forum-directed marketing and

4   product sales support exercising personal jurisdiction (which even Taobao acknowledges, Mot. at

5   8, 9) and Keck provides evidence of both of those forum contacts. *See Shuffle Master, Inc. v.*

6   *Kardwell Int'l, Inc.*, 2013 WL 12126745, at *4 (C.D. Cal. April 23, 2013) ("conducting commercial

7   activity over the internet with forum residents" and "encouraging residents of the forum state to

8   access the internet" may show "something more" under *Mavrix*). The Taobao Global U.S.

9   Merchants Network, for example, held an event in Los Angeles in 2017. Ex. 14 at 2. This Network

10  "serve[s] as a centralized matchmaking platform for U.S. small businesses to connect with

11  merchants and distributors on . . . a dedicated cross-border e-commerce channel within the larger

12  Taobao Marketplace." Ex. 14 at 1. Also, California-based Alibaba.com, Inc. provided marketing

13  services for Taobao Marketplace as recently as December 2015. Ex. 16 ¶ 2, 9, 11 (Alibaba.com,

14  Inc., "promotes the brand awareness of the Alibaba Platforms [defined as including Taobao.com]

15  primarily via trade show exhibitions, event marketing. . . ."). Regarding forum sales, <span style="background-color:red">Redacted</span>

16  ████ worth of merchandise purchased on Taobao Marketplace is shipped to California residents

17  each year. Ex. 30 ¶ 22.  Taobao, as the admitted "operating entity for the business *outside* China of

18  Taobao Marketplace" directed these forum-targeted activities.

19    Placing personnel in the forum or contracting with forum-based companies also evidences

20  an intent to exploit the forum's market and supports personal jurisdiction. *See, e.g., Rosen v.*

21  *Masterpiece Mkt. Grp., LLC*, 2016 WL 7444688, at *11 (C.D. Cal. Nov. 29, 2016); *LiveCareer,*

22  *Ltd. v. Su Jia Techs., Ltd.*, 2015 WL 1448505, at *4 (N.D. Cal. March 31, 2015). Taobao says that

23  employees of California-based Alibaba Group (U.S.) assist with "intellectual property issues" and

24  "anti-counterfeiting and IP rights protection efforts on the Alibaba Websites," which is defined to

25  include Taobao Marketplace. *See* Corrected Decl. Ho, ECF No. 193 ¶¶ 7, 28-30.

26    Further, operation of an interactive website supports personal jurisdiction, *see, e.g., Mavrix*,

27  647 F.3d at 1129; *Ismile Dental Prods., Inc. v. Smile Dental Supply, Inc.*, 2017 WL 1153110, at *4

28  (E.D. Cal. March 28, 2017); *Chloe SAS v. Sawabeh Infor. Servs. Co.*, 2012 WL 7679386, at *17

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1  (C.D. Cal. May 3, 2012). Taobao Marketplace is a "highly interactive" platform that "provides
2  methods for American internet users to create their own accounts, search for products, provide user
3  feedback, place orders for merchandise, and pay for merchandise." Compl. ¶ 117.

4       In its Motion papers, Taobao correctly notes courts consider a website's subject relevant to
5  jurisdiction. Mot. at 9. For example, in *Mavrix*, the Court reasoned an operator of a celebrity gossip
6  site could be sued in California partly because the U.S. entertainment industry is centered in
7  California. *See Mavrix*, 647 F.3d at 1230; *see also Chloe SAS*, 2012 WL 7679386, at *17 (website
8  selling counterfeit luxury items purposefully directed at California partly because of the state's
9  important "high fashion" market). But Taobao ignores the fact that the subject of Taobao's website,
10 a Chinese-language marketplace for goods, supports jurisdiction in California because of northern
11 California's large Chinese-speaking population. Ex. 32 at 2. Indeed, the evidence establishes that
12 <span style="background-color:black;color:red">Redacted</span> of Taobao's annual U.S. sales are to buyers in California, thus showing that
13 the subject of the Taobao Marketplace website is aimed at and is attractive to users in California.
14 Ex. 30 ¶¶ 21-22

15      Finally, Taobao cannot complain that its contacts with California are somehow random or
16 fortuitous because it purposefully directed its conduct to the U.S. as a whole, without regard to state
17 boundaries, in an effort to cultivate a nationwide audience. *Mavrix*, 647 F.3d at 1230-31 (reasoning
18 that cultivation of nationwide market in all 50 states supported jurisdiction in one state); *see also*
19 *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) (same). As shown here and in the
20 following section, Taobao, like the defendants in *Marvix* and *Keeton*, seeks to reach a national
21 market in the U.S. (not just the market of particular U.S. states or regions). Taobao expressly aimed
22 its conduct at California and this Court has jurisdiction of Taobao.

### b.     Keck's claims arise out of Taobao's California contacts.

24      The Ninth Circuit has explained that an infringement claim "arises out of" online contacts
25 when the infringing material was posted on a website that is "accessible to users in the forum state."
26 *Mavrix*, 647 F.3d at 1228; *see also Chloe SAS*, 2012 WL 7679386, at *19. Keck alleges that her
27 copyrights and trademark were infringed on Taobao Marketplace, and Taobao Marketplace is
28 accessible in California. Compl. ¶116. That should end the inquiry on whether Keck's claim arise

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

8

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

1   out of Taobao's California contacts.

2       Taobao, however, argues that Keck must allege the sale of infringing goods into California

3   to justify personal jurisdiction. Mot. at 9. This argument fails for multiple reasons. First, Taobao

4   misapprehends the nature of Keck's claims. The unauthorized reproduction and display of Keck's

5   artwork on Taobao Marketplace is an infringing activity (Compl. ¶¶ 119, 314), and that infringing

6   activity entitles Keck to damages, whether or not it caused her to lose a sale. *See Sony BMG Music*

7   *Ent. v. Tenenbaum*, 660 F.3d 487, 515 (1st Cir. 2011) (rejecting defendant's argument that "statutory

8   damages under the [Copyright] Act are unavailable without a showing of actual harm"). The

9   shipment of an unauthorized paper copy of the artwork is not a prerequisite for an infringement

10  claim. *See, e.g., Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1160 (9th Cir. 2007) (website's

11  display of copyrighted material was "a prima facie case of infringement").

12      Second, Taobao's insistence that physical shipment of a product to the forum is necessary

13  for a website operator to be subject to personal jurisdiction is contrary to settled law. Many website

14  operators who do not even offer to sell physical goods have been found subject to personal

15  jurisdiction because their sites targeted the forum. *See, e.g., Mavrix*, 647 F.3d at 1222 (celebrity

16  gossip site subject to jurisdiction based on posting copyrighted material on a website); *Brayton*

17  *Purcell, LLP v. Recordon & Recordon*, 606 F.3d 1124, 1131 (9th Cir. 2010) (law firm subject to

18  jurisdiction based on its forum-directed website content); *Life360, Inc. v. Advanced Grp. Info. Sys.,*

19  *Inc*., 2015 WL 5612008, at *7 (N.D. Cal. Sept. 21, 2015) (Freeman, J.) ("actual sales in the forum

20  state are not necessary to satisfy the purposeful direction test when the plaintiff alleges that the

21  defendant has damaged its brand and caused customer confusion"). *Cf.* Compl. ¶ 339. *Walden* does

22  not suggest otherwise: that case made clear that "physical entry into the State—either by the

23  defendant in person or through an agent, goods, mail, or some other means," is relevant for a

24  personal jurisdiction analysis but is "not a prerequisite to jurisdiction." 134 S. Ct. at 1122. Taobao's

25  reliance on *Rosen*, 2015 WL 12724071, at *8, is misplaced. There, jurisdiction was lacking because

26  the defendant website operator had not directed conduct toward the forum. *Rosen* did not hold that

27  a defendant who directed activities to the forum also had to deliver a product to the forum.

28      Taobao suggests that no one in California viewed images of Keck's works on Taobao

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981—7210

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

1   Marketplace (Mot. at 10), but Taobao has since admitted that at least some of those images were

2   indeed viewed by Taobao Marketplace visitors in California. Ex. 8 at 8-9. Taobao speculates that

3   Keck (an Indiana resident) or her agent viewed these images in California, but cites no evidence or

4   allegations to support that speculation.

5       Taobao acknowledges that Keck communicated with its California-based intellectual

6   property protection personnel about the infringement of her copyrights and trademark, but Taobao

7   insists those individuals' failure to adequately respond to Keck's concerns does not "target

8   California" and that "none of her claims arise from" these California contacts. Mot. at 10.  But the

9   relevant acts and omissions occurred *in* California, making it unnecessary to look at whether conduct

10  was targeted to California. *Martensen v. Koch*, 942 F. Supp. 2d 983, 994 (N.D. Cal. 2013). And,

11  Keck's claims arise from these forum contacts because Keck's harm would not have persisted had

12  infringing content been expeditiously removed from the Alibaba Websites. Keck has thus

13  established that her claims arise out of Taobao's contacts with California, and its Motion to Dismiss

14  should be denied.

15          **3.      Alternatively, Taobao is subject to jurisdiction under Rule 4(k)(2).**

16      Even if Taobao lacked sufficient contacts with California, Taobao would be subject to

17  jurisdiction under Fed. R. Civ. P. 4(k)(2). The due process analysis under Rule 4(k)(2) is "nearly

18  identical" to that under the California long-arm statute except "the relevant forum is the entire

19  United States," not just California. *LiveCareer, Ltd.*, 2015 WL 1448505, at *5. Rule 4(k)(2) also

20  applies only when the plaintiff's claims arise under federal law and no state court of general

21  jurisdiction is an available forum. Copyright and trademark claims undeniably arise under federal

22  law, and Taobao does not suggest that a state court of general jurisdiction is available. *Holland Am.*

23  *Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) (defendant challenging Rule

24  4(k)(2)'s application bears the burden of showing availability of a state court forum).

25              **a.      Taobao has expressly aimed conduct toward the United States.**

26      Under *Mavrix*, Taobao is subject to jurisdiction if it sought to exploit the U.S. market. Keck

27  has made that showing. Besides the evidence discussed above, the evidence shows:

28      ***U.S. Marketing***. Taobao marketed in the U.S. through events like Gateway '17 and Taobao

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

10

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

1  Global U.S. Merchants Network meetings. Ex. 8 at 18; Ex. 14.

2       *U.S. Content Delivery Networks*. Taobao uses content delivery networks (CDNs) located

3  across the United States (including one in California). Ex. 30 ¶ 15. U.S.-based CDNs allow U.S.

4  internet users to enjoy faster operation of the Taobao Marketplace website. *See AMA Multimedia,*

5  *LLC v. Sagan Ltd.*, 2016 WL 5946051, at *4 (D. Ariz. Oct. 13, 2016). Although the location of a

6  CDN may not, by itself, establish jurisdiction, the fact that Taobao—a Hong Kong company—went

7  to the effort to set up its own CDNs in the U.S., or contracted with a third party to use U.S.-based

8  CDNs, evidences Taobao's intent to reach U.S. internet users. *Cf. DEX Sys., Inc. v. Deutsche Post*

9  *AG,* --- F. App'x ---, 2018 WL 1280917, at *2 (9th Cir. 2018) (forum-based server not a "fortuitous"

10  contact).

11       *Renewal of U.S. Trademark for "Taobao."* "Taobao" is a registered U.S. trademark owned

12  by AGHL (Compl. ¶ 12), and AGHL recently certified that the trademark for "Taobao" was being

13  used in commerce that could be lawfully regulated by Congress. *See* 15 U.S.C. §§ 1058, 1127. *See,*

14  *e.g.*, Ex. 11. If the United States was not within the scope of Taobao's commercial ambitions, there

15  would be no reason to maintain a U.S. trademark registration for "Taobao,"  and it is "immaterial"

16  that AGHL, rather than Taobao, filed this renewal.  *See Mavrix*, 647 F.3d at 1230. Taobao generated

17  forum contacts through its operation of Taobao Marketplace, and the trademark filing demonstrates

18  that Taobao is deliberately building a presence in the U.S.

19       *Listing Prices in U.S. Dollars*. Prices for some items listed for sale on Taobao

20  Marketplace—including listings for unauthorized copies of Keck's artwork—are listed in U.S.

21  dollars (and Chinese yuan). Ex. 9 at 4; Ex. 10. The choice to display prices in dollars evidences an

22  intent to market to U.S. consumers and that intent was expressed specifically towards Keck's works.

23  *Graduate Mgmt. Ass'n Council v. Raju*, 241 F. Supp. 2d 589, 598 (E.D. Va. 2003). *See also*

24  *LiveCareer*, 2015 WL 1448505, at *2.

25       *U.S.-Specific Instructions*. Taobao provides merchants special guidance for shipping

26  products to customers in the U.S.—even designating logistics partners to assist with shipping items

27  to U.S. buyers. Taobao Marketplace provides this information for only a few geographic areas. Ex.

28  11 at 37; Ex. 12, Ex. 13. *See LiveCareer Ltd.*, 2015 WL 1448505, at *4 (forum-specific instructions

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981–7210

11

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

1  demonstrate intent to target the forum).

2      **U.S. Postal Service Delivery**. Webpages on Taobao Marketplace represent that products may

3  be shipped through the U.S. Postal Service. Ex. 8 at 17, Ex. 34, 34.1 (displaying Keck's work).

4      **U.S.-Directed Registration Page**. Internet users have the option of registering for a Taobao

5  Marketplace account using an English-language registration page with the United States as the

6  user's default location. Ex. 17.

7      **U.S. Flag on Website**. Some Taobao Marketplace webpages have an American flag or the

8  words "United States" at the top of the page. Compl. ¶ 118; *see also e.g.*, Ex. 11 at 21-27, 32.

9      **Large U.S. User Base**. Taobao, in operating the business of Taobao Marketplace outside

10  China, "anticipated, desired, and achieved a substantial [American] viewer base." *Mavrix*, 647 F.3d

11  at 1230. Taobao Marketplace has become one of the most popular websites in the U.S.—it ranked

12  as the 168th most popular website in the U.S. when the Complaint was filed. Compl. ¶ 116; *Compare*

13  *with Mavrix*, 647 F.3d at 1222 (noting the existence of approximately 180 million websites

14  worldwide). Taobao Marketplace receives visits from ▮▮Redacted▮▮ of unique U.S.-based IP

15  addresses each year. Ex. 30 ¶ 16; *Cf. CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1071

16  (9th Cir. 2011) (jurisdiction existed over defendant whose website had visits from 26,000 forum-

17  based IP addresses); *Chanel, Inc. v. Yang*, 2013 WL 5755217, at *7 (N.D. Cal. Oct. 21, 2013)

18  (jurisdiction existed over defendant whose website had 27,633 views in the forum). From 2014 to

19  2017, the gross merchandise value of items sold on Taobao Marketplace and delivered to U.S.

20  addresses averaged over ▮▮Redacted▮▮ annually. Ex. 30 ¶ 21. Such popularity demonstrates that the

21  U.S. is within the "geographic scope" of Taobao's commercial ambitions. *See Mavrix*, 647 F.3d at

22  1229; *see Shuffle Master, Inc.*, 2013 WL 12126745, at *4 (explaining that "the 'something more' of

23  the express aiming product looks to the number of online sales made to [forum] residents, not the

24  percentage of those giving rise to this action"); *see also Cybernet Entm't., LLC v. IG Media, Inc.*,

25  2012 WL 12874297, at *6 (D. Ariz. Nov. 30, 2012) ("[T]he Ninth Circuit Court of Appeals has

26  found that the number of visitors to a website from a particular forum is relevant to the express

27  aiming inquiry.").

28      **b.   Keck's injury arises from Taobao's contacts with the United States.**

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

As noted previously, Keck's injuries arise from Taobao's contacts with the U.S. if its website is "accessible to users in the forum . . . ." *Mavrix*, 647 F.3d at 1228; *see also Chloe SAS*, 2012 WL 7679386, at *19. Taobao, in arguing that Keck's injuries do not arise from Taobao's contacts with the U.S., recycles the arguments about sales and webpage views of Keck's works it presented in arguing Keck's claims did not arise out of Taobao's California contacts. Mot. at 12.  As explained above, these arguments lack merit. Keck's injuries thus arise from Taobao's contacts with the U.S., and the Motion should be denied.

### c.       Taobao's arguments fail.

Taobao argues for ignoring its U.S. contacts—those arguments all fail.

#### (1)       Taobao's argument about a purported language barrier fails.

Taobao contends that it cannot be sued in the United States because "Taobao Marketplace is a Chinese-language website and is not available in other languages." Corrected Decl. Ho, ECF No. 193 ¶ 35. This argument fails. The three million Americans who speak Chinese certainly face no language barrier on Taobao Marketplace. Ex 30 ¶ 16. And many internet browsers can translate Taobao Marketplace pages into English. The ease with which the site can be viewed in English is shown by the fact that screenshots from the Taobao Marketplace that AGHL recently submitted to the U.S. Trademark Office all contained English text.  Ex. 11. Even if the site could not be viewed in English, publication of a website in a language other than English is not a jurisdictional bar. *See, e.g., Bright Imperial Ltd. v. RT MediaSols., S.R.O.*, 2012 WL 1831536, at *8 (E.D. Va. May 18, 2012).

#### (2)       Taobao's argument about the percentage of Taobao Marketplace sales to the U.S. fails.

Taobao suggests that it is not subject to jurisdiction because Taobao Marketplace conducts the bulk of its business in China and that U.S. consumers are somehow not sufficiently "integral" to its business model. Mot. at 11. This argument misses the mark. "[T]he proper test for personal jurisdiction is not based on a 'percentage of business' analysis as contended by [Taobao], but rather on whether the absolute amount of business conducted by [Taobao] in [the United States] represents something more than 'random, fortuitous, or attenuated contacts' with the [United States]." *Collins*

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981–7210

13

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

*v. Easynews, Inc.*, 2006 WL 8433059, at \*6 (W.D. Tex. Sept. 12, 2006) (jurisdiction existed over website operator when 0.013% of the website's subscribers resided in the forum); *see also Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*, 2012 WL 4755041 at \*3 (N.D. Cal. Oct. 4, 2012) (jurisdiction existed when 0.02% of the defendant's online sales were to the forum). *Cf. Keeton*, 465 U.S. at 781 (magazine publisher who marketed to a national audience could be sued in New Hampshire despite having a relatively low circulation in that state). *Mavrix*—the case that Taobao cites for the "integral" language (Mot. at 9)—noted that the record in that case did not even provide the number of forum residents who visited the relevant website; the relevant inquiry was whether the defendant was trying to exploit the forum's market. 647 F.3d at 1222.

The figure Taobao provides for the percentage of Taobao Marketplace sales to U.S. residents also merits examination. The defendant here—Taobao China Holding, Ltd.—is the "operating entity for the business *outside China* of Taobao Marketplace." Mot. at 3 (emphasis added). Its business *inside of* China is therefore irrelevant to this inquiry. If visits to the Taobao Marketplace from inside China are disregarded, then in 2017, Taobao Marketplace received visits from more unique IP addresses in the United States than any other country. Ex. 28 at 2. If sales to China were similarly disregarded, then the percentage of sales on Taobao Marketplace to U.S. buyers would be much higher than the figure Taobao has provided.

The cases Taobao cites for its "percentage of sales" theory of jurisdiction are inapposite. In *Adobe Sys., Inc. v. Cardinal Camera Video Ctr., Inc.*, 2012 WL 5834135 (N.D. Cal. Oct. 7, 2015), there were no allegations that the defendant "directs its sales activities to [the forum];" thus merely fortuitous sales to the forum did not provide a basis for jurisdiction. *Facebook, Inc. v. Pedersen*, 868 F. Supp. 2d 953 (N.D. Cal. 2012), held that jurisdiction did not exist over a trademark claim that Facebook brought against a Norwegian operator of a pornographic website because the defendant was not trying to compete with the plaintiff. In the present case, Taobao Marketplace is competing with Keck by offering for sale exact copies of Keck's artwork in the forum where she conducts her business. Taobao has thus provided no authority to support its "percentage of sales" theory.

### (3)   Taobao has admitted that it operates Taobao Marketplace.

In its Motion papers, Taobao admits that it operates Taobao Marketplace. *See* Mot. at 3

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1   ("Alibaba[.com Hong Kong, Ltd.] and Taobao Operate the Alibaba Websites"); *id.* ("Taobao is the

2   operating entity for the business outside China of Taobao Marketplace."); *id.* ("Although Alibaba

3   HK and Taobao operate the Alibaba Websites . . ."); *id.* at 17 ("Alibaba HK and Taobao[] actually

4   operate or control the Alibaba Websites"). These statements follow Taobao's declaration that prior

5   to November 2017 it was "the operating entity" for Taobao Marketplace's "overseas business".

6   Corrected Decl. Ho., ECF No. 193 ¶ 35. AGHL's SEC filings also say that "Taobao China Holding

7   Limited [is]. . . the direct holding company of the [Chinese] subsidiaries relating to Taobao

8   Marketplace . . . and operating entity for the overseas business of Taobao Marketplace." Ex. 3 at 56.

9   Taobao operates Taobao Marketplace outside of China, including in the U.S.—Taobao is thus

10   subject to jurisdiction here.

11       Taobao may try to backtrack from its Motion papers where it stated that it is a website

12   operator and operates the Taobao Marketplace outside of China. Mot. at 3, 17. After making these

13   statements, Taobao turned around in an April 26, 2018 declaration and tried to qualify the meaning

14   of the word "operate." The new declaration, for instance, said that Taobao had only "operated" the

15   website by entering "certain agreements. . . regarding marketing of Taobao Marketplace" and

16   "provided funding in connection with some of those agreements" but "has not developed or

17   designed" marketing materials or "participated in any overseas marketing activities." Ex. 30 ¶ 30.

18   Refusing to attribute to itself activities carried out by agents or contractors, Taobao denied launching

19   the Taobao Global U.S. Merchants Network. Ex. 9 at 5. But, contrary to what Taobao may think,

20   actions carried out by agents and contractors matter in a jurisdictional analysis. *Daimler AG v.*

21   *Bauman*, 571 U.S. 117, 135 n.13 (2014) ("[A] corporation can purposefully avail itself of a forum

22   by directing its agents to take action there."); *CollegeSource, Inc.*, 653 F.3d at 1078.

23       Similarly, the April 26 declaration tries to shift responsibility for some of Taobao

24   Marketplace's operations to an unidentified Chinese entity by saying Taobao did not "exercise[]"

25   control over certain website content. This carefully worded statement does not say that Taobao

26   lacked control over website content (Ex. 30 ¶ 6), and Taobao has said it owns the Chinese

27   subsidiaries "relating to Taobao Marketplace" and it operates the website and business of Taobao

28   Marketplace outside China. Ex. 3 at 56; Mot. at 3, 17. And it would be wrong for Taobao to argue

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

15

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

1    on reply that website content posted by a subsidiary should be disregarded: *Mavrix* held it

2    "immaterial" to jurisdictional analysis whether the defendant or a third-party posts forum-directed

3    content on the defendant's website.  *Mavrix*, 647 F.3d at 1230.  In any event, if Taobao attempts to

4    change its arguments on reply, Taobao will create a factual conflict that must be resolved in the

5    favor of Keck. *Vista*, 2014 WL 5507648, at *1.

### (4)    *Atmos Nation* is distinguishable.

7        *Atmos Nation, LLC v. Alibaba Group Holding, Ltd.*, No. 0:15-cv-62104 (S.D. Fla. April 26,

8    2017) , is distinguishable because that court did not discuss evidence showing Taobao's extensive

9    efforts to exploit the U.S. market. Also, critical to the court's analysis in *Atmos Nation* was the fact

10   that the plaintiff, who filed its complaint in 2015, alleged that products could not be purchased from

11   Taobao Marketplace "without entering Chinese passport information and a bank account number

12   from a Chinese bank." Ex. 18 at 11. Now, by contrast, Americans may purchase products from

13   Taobao Marketplace using a Visa or MasterCard credit card and may have merchandise shipped to

14   them through the U.S. Postal Service. Ex. 8 at 17; Ex. 9 at 6-8.

15       Taobao's online contacts with California and the U.S. are not fortuitous but instead follow

16   from intentional efforts to expand its business in the U.S. Keck has presented a prima facie case of

17   jurisdiction, and the Motion should be denied.

### 4.    AGHL Is Subject to Specific Personal Jurisdiction.

19       AGHL is also subject to personal jurisdiction. AGHL has sufficient contacts of its own with

20   California, or the U.S. as a whole; Keck's claims arise from those contacts; and other cases that have

21   addressed whether AGHL is subject to personal jurisdiction are distinguishable.

### a.    AGHL has expressly aimed conduct toward California and the U.S.

### (1)    The forum contacts of AGHL's agents on intellectual property issues establish jurisdiction.

25       AGHL dealt with the intellectual property controversies the Alibaba Websites have

26   confronted in the United States. AGHL, for instance, spent large sums lobbying the U.S. government

27   on intellectual property issues. Ex. 26; Ex. 27. AGHL also has U.S.-based agents who handle various

28   intellectual property issues. A 2015 press release said that "Alibaba Group Holding Limited (NYSE:

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

16

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

BABA) today announced the appointment of Matthew Bassiur as Vice President, Head of Global Intellectual Property Enforcement." Ex. 15. It further explained that Bassiur will work "to advance Alibaba Group's anti-counterfeiting and IP rights protection efforts" and that he would report to AGHL president Michael Evans. Ex. 15.  A 2016 submission to the U.S. Trade Representative later confirmed that, "[b]ased in the United States, Mr. Bassiur reports directly to Michael Evans, President of Alibaba Group." Ex. 4 at 11. Dougherty (also based in California, Compl. ¶ 227) and Wang (who is based in the U.S., Compl. ¶ 215) joined Bassiur's "Global IP" team. Bassiur and Dougherty were held out at Gateway '17, respectively, as "Vice President, Head of Global IP Enforcement, Alibaba Group" and "Senior Director, Global IP, Alibaba Group." Ex. 7 at 2. An e-mail Dougherty sent Keck similarly identified him as working for "Alibaba Group." Ex. 35. These facts, at a minimum, establish a prima facie showing that the Global IP team members are AGHL agents. *Cf. United States v. Agne*, 214 F.3d 47, 55 (1st Cir. 2000) ("report[ing] directly" to and being directly responsible to principal may evidence agency).

AGHL says that Global IP team members Bassiur, Dougherty, and Wang are actually employees of Alibaba Group (U.S.) (Mot. at 4), but that does not mean they are not AGHL agents. First, there is a factual dispute over which entity employs those individuals. Bassiur and Dougherty were identified in the June 2017 program for Gateway '17 as working for "Alibaba Group" and Dougherty sent an e-mail to Keck in December 2016 that identified him as working for "Alibaba Group," but at those times Alibaba Group (U.S.) was known as Nimbus Development, Inc. Ex. 29. But even assuming those individuals were Alibaba Group (U.S.) employees, their actions would be imputed to AGHL under an agency theory. "Under long-accepted agency principles, '[a] person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment to the service of the other.'" *Dazo v. Globe Airport Sec. Servs.*, 295 F.3d 934, 939 (9th Cir. 2002) (quoting *Restatement (Second) of Agency* § 226).

The Global IP team members are directly connected to Keck's claims. Keck initially contacted Bassiur regarding the infringement of her intellectual property rights, and Dougherty eventually responded to Keck on Bassuir's behalf. Compl. ¶ 227. Keck repeatedly contacted Bassiur, Dougherty, and Wang about this infringement on the Alibaba Websites. *See, e.g.,* Compl.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1   ¶¶ 253-54. But, infringing activity continued, even though Global IP team members indicated they

2   could remove infringing listings. *See, e.g.* Compl. ¶ 224.

3         As noted above, the Global IP team members whose omissions allowed the infringement of

4   Keck's copyrights and trademark to continue acted as agents of AGHL, and their forum contacts are

5   imputed to AGHL. AGHL argues that contacts of its subsidiaries cannot be imputed to it under an

6   alter ego or agency theory. Mot. at 14-17.  But, Keck does not advance an alter ego or "general

7   agent" theory of jurisdiction. Nor does she argue that all of Alibaba Group (U.S.) is an AGHL

8   agent—she merely argues that the Global IP team members are AGHL agents.

9         Any argument by AGHL that an agent's forum contacts must be disregarded in a

10   jurisdictional analysis fails. As AGHL notes, the Ninth Circuit formerly held that a subsidiary's

11   forum contacts could be imputed to the parent under a so-called "general agent" theory if the

12   subsidiary's services were so "sufficiently important" that the parent would perform similar services

13   if it did not have a representative providing them. *Williams v. Yamaha Motor Co., Ltd.*, 851 F.3d

14   1015, 1024 (9th Cir. 2017). Keck acknowledges that, after *Daimler*, the "sufficiently important"

15   formulation of the general agent theory is not a valid basis for either general or specific jurisdiction.

16   *See Williams*, 851 F.3d at 1024. But *Williams* does not hold that an agent's contacts can never be

17   imputed to the principal in a jurisdictional analysis, and it suggests that forum contacts of someone

18   who "act[s] on the principal's behalf and subject to the principal's control" may be imputed to the

19   principal. *Williams*, 851 F.3d at 1024 (citing *Restatement (Third) of Agency* § 1.01). Reading

20   *Williams* to prohibit consideration of agents' forum contacts would not only upend decades of

21   precedent but also disregard key language in *Daimler*. *See Daimler*, 571 U.S. at 135 n.13 ("[A]

22   corporation can purposefully avail itself of a forum by directing its agents . . . to take action there")

23   (citing *Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal,*, 480 U.S. 102, 112 (1987)(O'Connor, J.);

24   *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)); *Walden*, 134 S. Ct. at 1122 (describing

25   entry into the forum "through an agent" as a "relevant contact" for personal jurisdiction); *see also*

26   *Myers,* 238 F.3d at 1073 (acts of apparent agent may establish jurisdiction); *Helicopter Trans.*

27   *Servs., LLC v. Sikorsky Aircraft Corp.*, 253 F. Supp. 3d 1115, 1128 (D. Or. 2017) (forum contacts

28   of subsidiary imputed to parent under agency theory).

18

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

(2)     **AGHL has represented it operates the Alibaba Websites.**

AGHL's forum contacts are not limited to its intellectual property protection efforts. Indeed, AGHL works jointly with its subsidiaries in overseeing the development of the Alibaba Websites (two of which—Alibaba.com and AliExpress.com—AGHL does not dispute target the U.S). In SEC filings, AGHL describes its e-commerce platforms as part of an e-commerce "ecosystem" and explains that "[w]e feel a strong responsibility for the continued development of the ecosystem and we take ownership in this development." Compl. ¶ 128; Ex. 3 at 60. It further says, in SEC filings, that "[w]e operate Taobao Marketplace," "[w]e operate AliExpress," and "[w]e operate Alibaba.com." Ex. 3 at 58-59.  The use of the word "we" must be read, at least at this stage of the litigation, to refer jointly to AGHL and its subsidiaries. While AGHL, in those filings, said it was a holding company, it used the term "we" to refer collectively to "Alibaba Group Holding Limited and its consolidated subsidiaries and its affiliated consolidated entities." Ex. 3 at iii; *see also* Compl. ¶ 9. Any factual conflict between the SEC filings and other evidence must, at this stage, be resolved in Keck's favor. *See Naranjo v. Yum! Brands, Inc*. 2009 WL 10692674 (C.D. Cal. Jan. 20, 2009) (Rule 12(b)(2) motion denied, despite defendant's insistence it was a holding company whose subsidiary acted in the forum, when the defendant represented on its website it had a facility in the forum and treated itself and its subsidiaries collectively in SEC filings when describing their activities); *see also Vanderbilt Mortgage & Fin., Inc. v. Flores*, 692 F.3d 358, 376 (5th Cir. 2012).

Other representations by AGHL demonstrate that it works jointly with its subsidiaries in operating the Alibaba Websites and building the Alibaba brand in the U.S. AGHL—treating itself collectively with Alibaba.com, Ltd. (an indirect holding company related to Alibaba.com, AliExpress.com, and 1688.com, Ex. 3 at 56)—recently intervened in a case because it purported to be "the provider of an electronic commerce platform" where intellectual property rights had been infringed. Ex. 19 at 4. Similarly, the user agreement for the Alibaba IP Protection platform says that "[t]he Alibaba Group and its subsidiaries and affiliates (collectively, 'Alibaba') operate e-commerce platforms" including Taobao.com, AliExpress.com, and Alibaba.com. Ex. 20 at 1. And, in a complaint AGHL filed in the Southern District of New York, AGHL asserted that "Alibaba Group Holding and its operating subsidiaries . . . have spent many years, and substantial resources, building

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

19
PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

1    public confidence and consumer goodwill in" its "Alibaba" trademarks, and, that because of the

2    "extensive and continuous use of those marks" in the United States, "Alibaba Group Holding owns

3    common law rights" to those marks under New York law.  S*ee* Ex. 21 intro para, ¶ 89.

4         The U.S. marketing activities of AGHL (not just its subsidiaries) demonstrate that in helping

5    operate the Alibaba Websites, AGHL seeks to exploit the U.S. market. AGHL operates the

6    Alizila.com website. *See* Ex. 5 at 1 ("This Terms of Service Agreement (the 'Agreement') describes

7    the terms and conditions applicable to your use of the web site operated by Alibaba Group Holding

8    Limited . . . ."). A quick look at Alizila.com shows AGHL seeks to appeal to U.S. audiences because

9    the site is in English, features stories about Alibaba events in the U.S. (such as Gateway '17), and

10   features stories about Americans doing business on the Alibaba Websites. Ex. 6 at 54-57; Ex. 22.

11   The YouTube page for "Alibaba Group" bears the "Alizila" name and, while noting that the

12   company was founded in China, identifies Alibaba Group's "country" as the United States. Ex. 23;

13   *see also* Ex. 6 at 36-37. AGHL also operates the English-language alibabagroup.com site. *See*

14   Compl. ¶ 12; Ex. 24 at 1. ("Alibaba Group Holding Limited ("Alibaba" or "we") adopts the

15   following Privacy Policy"). In addition, the "Our Offices" page of alibabagroup.com identifies San

16   Mateo, California, as the location of one of "the principal offices of Alibaba Group." Ex. 25; Compl.

17   ¶ 6.

18              **b.       Keck's claims arise out of AGHL's forum contacts.**

19        Through its self-described "ownership" in developing its e-commerce "ecosystem" and

20   "operation" of the Alibaba Websites and through its extensive involvement in intellectual property

21   protection efforts in the U.S., AGHL expressly aims activity to the U.S and California. Keck's

22   claims arise out of these contacts: Keck's works were infringed on the Alibaba Websites. And—if

23   not for the failure of AGHL's U.S.-based Global IP personnel to remove infringing material from

24   the Alibaba Websites and implement more effective anti-counterfeiting measures—the infringement

25   of Keck's copyrights and trademarks would not have persisted. Keck has therefore established that

26   her claims arise out of AGHL's forum contacts.

27              **c.       The Florida and Missouri cases AGHL cites are distinguishable.**

28        AGHL points to decisions holding it was not subject to personal jurisdiction in Florida and

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

20

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

1   Missouri (Mot. at 6), but those decisions are distinguishable. *Atmos Nation* did not discuss specific

2   acts or omissions by AGHL, instead addressing an alter ego theory of jurisdiction and some vague

3   allegations against the defendants collectively. Ex. 18 at 7, 10. The *Cepia* and *Englert* decisions

4   both held that AGHL's ownership of a domain name and trademark as well as its ownership of a

5   subsidiary that acted in the forum were insufficient to subject it to jurisdiction in Missouri. None of

6   those opinions addressed evidence that AGHL's agents had any dealings with the plaintiff or that

7   AGHL (as opposed to a subsidiary) had anything to do with intellectual property protection efforts,

8   and therefore, do not support AGHL's argument.

9         For these reasons, AGHL is subject to personal jurisdiction under both the California long-

10   arm statute and Fed. R. Civ. P. 4(k)(2).

11   **B.**       **Keck Alleged Claims Against AGHL, Alibaba Group (U.S.), and Alibaba.com, Inc.**

12         In addition to sufficiently establishing personal jurisdiction as to Taobao and AGHL,

13   Keck's Complaint also contains sufficient allegations to state claims against AGHL, Alibaba

14   Group (U.S.) and Alibaba.com, Inc. for contributory and vicarious infringement of Keck

15   copyrights. Since they are moving under Rule 12(b)(6), defendants must base their argument on

16   the allegations in the Complaint—not on conclusory statements in self-serving declarations. Much

17   of the defendants' argument is based on the conclusory statement that AGHL, Alibaba Group

18   (U.S.), and Alibaba.com, Inc, "do not operate or control the Alibaba Websites." Mot. At 17. To be

19   sure, a defendant need not operate a website to be liable for infringing activities taking place

20   online. *See, e.g., Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936 (9th Cir. 2011)

21   (defendant liable for contributory trademark and copyright infringement based on leasing server

22   space to a third-party website operator). But the Complaint alleges those defendants had the

23   authority and ability to police infringing activity on the Alibaba Websites, and Keck repeatedly

24   notified their agents that her copyrights and trademarks were being infringed on those websites.

25         Entities in AGHL's "ecosystem" regularly call themselves "Alibaba" with no further

26   designation (Compl. ¶ 17), share office space (Compl. ¶ 16), and routinely provide services for each

27   other across corporate lines. Compl. ¶ 12. AGHL, Alibaba Group (U.S.), and Alibaba.com, Inc.

28   however, now object to Keck treating closely related entities collectively in some of the allegations

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

21

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

in her Complaint. Sometimes (such as when a claim must be pled with particularity), defendants cannot be treated collectively in a pleading. But in a copyright infringement case brought against related entities the plaintiff is not required "to allege how each defendant infringed the plaintiff's copyright." *Friedman v. Zimmer*, 2015 WL 6164787, at *2 (C.D. Cal. July 10, 2015) ("Before discovery, Plaintiff has no reasonable means of determining the roles that the Moving Defendants played. . . .Plaintiff's infringement claim may be based on a generalized allegation, but it fairly puts the Moving Defendants on notice of the basis for his claim."). The Complaint adequately alleges the elements of contributory and vicarious infringement. *See, e.g.,* Compl. ¶¶ 185-196 (material contribution to infringing activity); ¶¶ 197-204, 282-284 (ability to control infringing activity); ¶¶ 205-08, 285 (financial benefit from infringing activity); ¶¶ 209-67 (knowledge of infringing activity).

But even if the Court were to consider only the allegations specifically directed to AGHL and Alibaba Group (U.S.), Keck alleged vicarious and contributory infringement claims against them. "In the context of copyright law, vicarious liability extends beyond an employer/employee relationship to cases in which a defendant 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'" *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001). Vicarious liability does not require veil piercing. *See Broadcast Music, Inc. v. Meadowlake, Ltd.*, 754 F.3d 353 (6th Cir. 2014) (affirming summary judgment for vicarious copyright liability against an individual who had a controlling interest in, but did not exercise day to day control over, an LLC that in turn owned a restaurant where bands violated songwriters' copyrights); *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408 (N.D. Cal. 2004) (complaint presented claim for vicarious copyright infringement against investors in a company that provided file sharing software to individuals who directly infringed plaintiffs' copyrights); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) (flea market operator vicariously liable for infringement by vendors).

Keck's allegations establish that AGHL vicariously violated her copyrights. AGHL does not dispute that Keck alleged AGHL's receipt of a financial benefit from infringing activity. Mot. at 19. Indeed, Keck alleges that sales of her works generated commissions and served as a "draw" to

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

internet users. Compl. ¶¶ 13, 133, 205-06. *See A&M Records*, 239 F.3d at 1023. AGHL says that Keck did not allege that AGHL "had the right or ability to remove infringing listings." Mot. Dismiss at 19. But as the parent of the so-called "operating entities" (Mot. at 1), AGHL has the power to have infringing material removed from the Alibaba Websites. Moreover, Keck specifically alleged that AGHL President Michael Evans told *Fortune* magazine that his company removed 380 million listings (Mot. at ¶ 139); that Dan Dougherty said her takedown requests were sent to "the relevant team in Hangzhou" (the city where AGHL's principle place of business is located) (Compl. ¶¶ 6, 228); and that AGHL addresses intellectual property concerns on alibabagroup.com. Compl. ¶ 15. Keck also alleged that Bassiur and Dougherty, both designated as members of the global intellectual property enforcement team, were AGHL employees. Compl. ¶¶ 15, 225, 227. AGHL contends in a declaration that Bassiur and Dougherty were really employees of Alibaba Group (U.S.), but AGHL cannot rely on that declaration in a Rule 12(b)(6) motion. Even if that declaration were accepted, Keck alleged that employees of the various Alibaba entities perform services across corporate lines. Compl. ¶ 12.

Likewise, Keck sufficiently alleges that Alibaba Group (U.S.) is vicariously liable for copyright infringement. Alibaba Group (U.S.) says it could not remove infringing listings. Mot. at 19. But Xingho Wang, identified as "an Alibaba employee based in the United States who dealt with intellectual property concerns," told Keck that "we will process" her takedown request. Compl. ¶¶ 215, 224.  (Alibaba Group (U.S.) confirmed that it employs Wang. Corrected Decl. of Ho ECF No. 193 at ¶ 30.) Alibaba Group (U.S.) also says that it does not have customers and did not "make money from the claimed infringements." Mot. at 19. The display of Keck's works on the Alibaba Websites has drawn U.S. visitors to those sites and generated sales commissions. Compl. ¶¶ 205-06. Alibaba Group (U.S.) has an interest in commissions and in an increased U.S. userbase because of its close relationship with the "operating entities" in the "ecosystem."

Keck also stated claims of contributory copyright infringement. Contributory copyright infringement requires proof that a defendant knew of, and materially contributed to, infringing activity. *Fonovisa, Inc.*, 76 F.3d at 264. In the online context, contributory liability exists for "a computer system operator [who] learns of specific infringing material on his system and fails to

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1  purge such material from the system." *A&M Records*, 239 F.3d at 1021. A "system operator" need

2  not be the entity operating a site where a direct infringer posts infringing content. *See Perfect 10,*

3  *Inc.*, 508 F.3d at 1172 (search engine contributed to infringement).

4        Keck alleged that AGHL and Alibaba Group (U.S.) knew of the infringing activity: she sent

5  numerous e-mails to Dougherty, Wang, and Bassiur regarding the infringement of her copyrighted

6  works on the Alibaba Websites, but the infringement continued. *See, e.g.*, Compl. ¶¶ 253-54. AGHL

7  and Alibaba Group (U.S.) are "computer system operators," given their ability, discussed above, to

8  remove content on the Alibaba Websites. But even if they were not "operators," they would be liable

9  for contributory infringement. AGHL, similar to the flea market operator in *Fonovisa* or Napster

10  investor in *A&M Records*, oversees an ecosystem that provides resources to merchants who

11  infringed Keck's copyrights. Alibaba Group (U.S.)'s provision of maintenance, support, marketing,

12  and investment services for the Alibaba Websites (Compl. ¶¶ 4, 102) similarly materially contributes

13  to infringing activity. *Intercom Ventures, LLC v. FasTV, Inc.*, 2013 WL 2357621, at *5 (N.D. Ill.

14  May 28, 2013) (contributory liability claim alleged against website maintenance provider); *see also*

15  *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 161 (3d Cir. 1984) (provision of

16  financial services contributed to infringement). *ALS Scan, Inc. v. CloudFlare, Inc.*, 2017 WL

17  1520444 (C.D. Cal. Feb. 16, 2017) does not suggest otherwise. There a plaintiff merely alleged that

18  a defendant "hosted" online material and was granted leave to file a more detailed complaint

19  describing the defendant's services with greater particularity. *Compare with Akanoc Sols., Inc.*, 658

20  F.3d 936 (provider of web hosting services liable for contributory infringement).

21        Keck also brings claims for contributory trademark infringement against AGHL and Alibaba

22  Group (U.S.), and to survive the motion, needs only to allege that the defendants provided services

23  to someone they knew or had reason to know was engaging in trademark infringement and that the

24  defendants could control or monitor the instrumentality being used for the infringing activity.

25  *Arkanoc Sols.*, 658 F.3d at 942. Keck clearly met that standard by alleging that AGHL and Alibaba

26  Group (U.S.) knew of the infringing activity and could remove infringing material from the Alibaba

27  Websites, and even told these defendants her copyright and trademark were being infringed. *See,*

28  *e.g.*, Compl. ¶ 265. The defendants cite *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981−7210

24

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF

Cir. 2007), but that case is inapposite. That case reasoned that a credit card company would not be liable for contributory trademark infringement because payment processing did not cause the infringement or allow it to continue—it only made the infringement activity profitable.

Defendants also challenge Keck's request for a declaration on the applicability of the Digital Millennium Copyright Act's "safe harbor," arguing that subject matter jurisdiction is lacking because they have not formally asserted a safe harbor defense. But this issue is academic because defendants have not waived the defense and are likely to assert it. The Court should take this issue under advisement until the defendants file their answer.

Finally, the defendants acknowledge that Keck can seek injunctive relief for the causes of action she asserts (Mot. at 22), but object to Keck styling her request for injunctive relief as a "count." Keck would be happy to address this issue in an amended complaint if the Court deems it necessary.

## IV.    CONCLUSION

The Motion should be denied in its entirety. If the Court finds that any allegations are insufficient, Keck requests leave to amend her Complaint. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008).

Dated: May 11, 2018                By:    _____
                                          */s/ Jason W. Earley*
                                          Jason W. Earley
                                          HARE, WYNN, NEWELL & NEWTON, LLP
                                          *One of the attorneys for Plaintiff Michel Keck*

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

25
PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
- CASE NO. 5:17-cv-05672-BLF