United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MICHEL KECK,<br><br>　　　　　Plaintiff,<br><br><br>　　v.<br><br><br>ALIBABA.COM, INC., et al.,<br><br>　　　　　Defendants. | Case No.  17-cv-05672-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART ALIBABA DEFENDANTS' MOTION TO DISMISS; AND GRANTING PLAINTIFF'S MOTION TO STRIKE NEW ARGUMENTS RAISED IN ALIBABA DEFENDANTS' REPLY**<br><br>[Re: ECF 152, 202-1] |

Plaintiff Michel Keck brings this copyright and trademark infringement action against e-commerce giant Alibaba Defendants[1] and numerous Chinese merchants.  *See generally* Compl., ECF 1.  Before the Court is Alibaba Defendants' motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  Mot., ECF 152.  Having considered the briefing and oral argument of the parties, as well as the governing law, the Court GRANTS IN PART and DENIES IN PART Alibaba Defendants' motion to dismiss WITH LEAVE TO AMEND IN PART and WITHOUT LEAVE TO AMEND IN PART.

## I.    BACKGROUND

Plaintiff is a professional artist who resides in Indiana and sells her artwork from her own website and through authorized dealers.  Compl. ¶¶ 1, 148.  She alleges that her artwork was reproduced and sold on Alibaba.com, AliExpress.com, Taobao Marketplace, Tmall, and 1688.com

---

[1] Defendants Alibaba.com, Inc., Alibaba Group (U.S.), Inc., Alibaba Group Holding, Ltd., Alibaba.com Hong Kong, Ltd., and Taobao China Holding, Ltd. are collectively referred to as "Alibaba Defendants."  On February 7, 2018, Keck dismissed Defendant Alipay US, Inc. without prejudice.  ECF 165.

by Chinese merchants without her authorization. *See, e.g.*, *id.* ¶¶ 156–161, 251, 255–58, 260–61, 263. Plaintiff alleges that she sent numerous notices requesting that the infringing products be taken down from the virtual online stores. *See, e.g.*, *id.* ¶¶ 218, 224, 248–64. Thereafter, on October 2, 2017, Plaintiff filed this lawsuit against Alibaba Defendants and numerous Chinese merchants ("Defendant Stores").

The Complaint further pleads the following. Alibaba Group Holding, Ltd. ("AGHL") is organized and exists under the laws of Cayman Islands and has its principal address in Hangzhou, People's Republic of China. Compl. ¶ 6. Alibaba.com, Inc., is a Delaware corporation with its principal place of business in California. *Id.* ¶¶ 3, 6. It is an "indirect subsidiary of [AGHL] and is [AGHL's] principal American subsidiary." *Id.* Alibaba Group (U.S.), Inc. ("Alibaba US") is a Delaware corporation with its principal place of business in California. *Id.* at ¶ 4. It is a subsidiary of AGHL. *Id.* ¶¶ 4, 6.

Alibaba.com Hong Kong, Ltd. ("Alibaba HK") is organized and exists under the laws of Hong Kong, S.A.R. with its principal place of business in Hong Kong. Compl. ¶ 7. Alibaba HK is "wholly owned by Alibaba.com Ltd." *Id.* Taobao China Holding, Ltd. ("TCHL") is organized and exists under the laws of Hong Kong, S.A.R. with its principal place of business in Hong Kong. *Id.* ¶ 8. TCHL is the "direct, wholly-owned, subsidiary of Taobao Holding." *Id.*

Plaintiff asserts the following eight claims:

(1) direct copyright infringement (against Defendant Stores);

(2) contributory copyright infringement (against Alibaba Defendants);

(3) vicarious copyright infringement (against Alibaba Defendants);

(4) declaratory judgment (against Alibaba Defendants);

(5) injunctive relief (against Alibaba Defendants);

(6) injunctive relief (against Defendant Stores);

(7) contributory trademark infringement (against Alibaba Defendants); and

(8) contributory trademark infringement and false designation of origin under 15 U.S.C.

§ 1125(a) (against Alibaba Defendants).

Compl. ¶¶ 308–54. The second, third, fourth, and fifth claims are class claims.

United States District Court
Northern District of California

1    On January 31, 2018, Alibaba Defendants filed the instant motion seeking to dismiss

2    claims asserted against them pursuant to Rule 12(b)(2) and Rule 12(b)(6).  Thereafter, the Court

3    granted Plaintiff's request for jurisdictional discovery.  ECF 181.

4    **II.   LEGAL STANDARD**

5        **A.   Rule 12(b)(2)**

6        Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek dismissal of an

7    action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  "Where, as here, the defendant's

8    motion is based on written materials rather than an evidentiary hearing, the plaintiff need only

9    make a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  *Ranza v.*

10   *Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation marks and citation omitted).

11   Uncontroverted allegations in the complaint are taken as true, *Schwarzenegger v. Fred Martin*

12   *Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004), and factual disputes contained within declarations

13   or affidavits are resolved in the plaintiff's favor, *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th

14   Cir. 2008).

15       Where no applicable federal statute governs personal jurisdiction, "the law of the state in

16   which the district court sits applies."  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements*

17   *Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).  "California's long-arm statute allows courts to

18   exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of

19   the United States Constitution."  *Id.*  A court may exercise personal jurisdiction "consistent with

20   due process only if [the defendant] has 'certain minimum contacts' with the relevant forum such

21   that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

22   justice.' "  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205

23   (9th Cir. 2006) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

24       "The strength of contacts required depends on which of the two categories of personal

25   jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza*, 793 F.3d at

26   1068.  General jurisdiction is based on certain limited affiliations that the defendant has with the

27   forum state.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  In

28   contrast, specific jurisdiction is based on the defendant's connections to the state with regard to the

United States District Court
Northern District of California

3

particular controversy at issue.  *Id.*  Specific jurisdiction can thus exist even when the defendant's contacts with the forum state are limited, so long as the plaintiff's claims arise out of or relate to those contacts.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

**B.    Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When considering such a motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**III.    PLAINTIFF'S MOTION TO STRIKE NEW ARGUMENTS**

After briefing closed, Plaintiff filed a motion for leave to submit her motion to strike new arguments raised in Alibaba Defendants' reply brief.  ECF 202.  Specifically, Plaintiff seeks to strike Alibaba Defendants' arguments that TCHL does not operate Taobao Marketplace and that amending the complaint to "plead claims against the entities that actually are responsible for operating Taobao Marketplace would be futile."  Mot. to Strike 5, ECF 202-1.  Alibaba Defendants filed an opposition to Plaintiff's motion for leave and motion to strike new arguments. ECF 203.  The Court granted Plaintiff's request for leave to file the motion to strike new arguments.  ECF 204.

During the June 14, 2018 hearing, the Court granted Plaintiff's motion to strike new arguments because Alibaba Defendants changed their position in their reply brief as to whether TCHL operates Taobao Marketplace.  *See* Hearing Tr. 39:5–8, ECF 208.  Plaintiff argues that her jurisdictional discovery was premised on Alibaba Defendants' earlier admission that TCHL operates Taobao Marketplace.  *Id.* at 15:5–14.  Plaintiff requests only to strike new arguments but

United States District Court
Northern District of California

4

not the underlying evidence. *See id.* at 4:1–12. The Court agrees with Plaintiff. Alibaba Defendants' claim that their reply papers merely reflect the facts identified during jurisdictional discovery is not persuasive. The reply brief appears to argue a complete about face on the issue and as such, those arguments are prejudicial to Plaintiff. While the Court will not consider Alibaba Defendants' new arguments, it will assess the evidence pertaining to the operation of Taobao Marketplace.

## IV.    DISCUSSION

Alibaba Defendants raises several grounds for bringing the instant motion. First, Alibaba Defendants argue that AGHL and TCHL should be dismissed for lack of personal jurisdiction. Mot. 1–2. Second, Alibaba Defendants assert that the Complaint fails to state a claim against AGHL, Alibaba.com Inc., and Alibaba US. *Id.* at 1–2. Third, they contend that the fourth claim (declaratory judgment against Alibaba Defendants) and fifth claim (injunction relief against Alibaba Defendants) should be dismissed. *Id.* at 2. The Court addresses each argument in turn.

### A.    Dismissal Based on Lack of Personal Jurisdiction

The parties dispute whether this Court has personal jurisdiction over AGHL and TCHL.[2] A court has personal jurisdiction over a defendant if it is permitted by a long-arm statute and exercise of that jurisdiction does not violate due process. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). California's long-arm statute provides that a court may exercise jurisdiction to the extent that due process permits. *Schwarzenegger*, 374 F.3d at 800–01. If the defendant is "not subject to the personal jurisdiction of any state court of general jurisdiction," Federal Rule of Civil Procedure 4(k)(2) allows a court to exercise personal jurisdiction over federal law claims so long as the defendant's contacts with the United States as a whole satisfy due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461–62 (9th Cir.

---

[2] While the Complaint alleges that infringement activities occurred on the Tmall and 1688.com websites, it does not plead that personal jurisdiction exists based on Alibaba Defendants' operation of those two websites. *See* Compl. ¶¶ 101–23. While Alibaba Defendants challenge Plaintiff's assertion of personal jurisdiction based on the Alibaba.com, AliExpress.com, and Taobao Marketplace websites, Plaintiff does not contend that personal jurisdiction exists due to the Tmall and 1688.com websites. Accordingly, the Court declines to find personal jurisdiction based on operation of those two websites.

United States District Court
Northern District of California

1    2007).  Personal jurisdiction may be based on general jurisdiction or specific jurisdiction.

2    *Daimler*, 571 U.S. at 126.

3    Alibaba Defendants contend that there is no general jurisdiction over AGHL and TCHL.

4    Mot. 7–8.  Plaintiff does not dispute this contention.  As such, both parties' briefing focuses only

5    on whether specific jurisdiction exists.

6    The Ninth Circuit has articulated a three-prong test to determine whether a defendant has

7    sufficient "minimum contacts" with a forum to justify specific jurisdiction: (1) The non-resident

8    defendant must purposefully direct his activities or consummate some transaction with the forum

9    or resident thereof; or perform some act by which he purposefully avails himself of the privilege

10   of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2)

11   the claim must be one which arises out of or relates to the defendant's forum-related activities; and

12   (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be

13   reasonable.  *Yahoo!*, 433 F.3d at 1206; *see also Schwarzenegger*, 374 F.3d at 802 (citing *Lake v.*

14   *Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  If the plaintiff satisfies the first two prongs of this

15   minimum contacts test, the burden then shifts to the defendant to present a "compelling case" that

16   the exercise of jurisdiction would be unreasonable.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653

17   F.3d 1066, 1076 (9th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78

18   (1985)).

19   The exact form of the Court's jurisdictional inquiry depends on the nature of the claim at

20   issue.  "Purposeful direction" and "purposeful availment" are two distinct concepts, the former

21   most often used in suits sounding in tort and the latter in suits sounding in contract.

22   *Schwarzenegger*, 374 F.3d at 802.  The parties agree that Plaintiff's copyright and trademark

23   infringement claims are both tort-like causes of action and thus the purposeful direction standard

24   applies.  Mot. 6; Opp'n 5.  The Court agrees and applies the purposeful direction test.

25   The purposeful direction standard is evaluated under the "effects" test first articulated

26   in *Calder v. Jones*, 465 U.S. 783 (1984).  Under that test, "a defendant purposefully directed his

27   activities at the forum if he: (1) committed an intentional act, (2) expressly aimed at the forum

28   state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot*

1    *v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (internal quotation marks and citation omitted).

2    Analysis of those factors must focus on the "defendant's contacts with the forum state itself, not

3    the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122

4    (2014).

5        Against this backdrop, the Court turns to whether it has specific jurisdiction over AGHL

6    and TCHL.

7            **i.    AGHL**

8        Alibaba Defendants argue that Plaintiff cannot show a *prima facie* case of jurisdiction over

9    AGHL because it is a foreign company "with no involvement in the events that give rise to this

10    lawsuit." Mot. 6. According to Alibaba Defendants, courts have held that AGHL is "not subject

11    to personal jurisdiction in suits arising out of sales and listings on the Alibaba Websites."[3] *Id.* at

12    6–7 (collecting cases). Alibaba Defendants also assert that AGHL does not operate or control the

13    Alibaba Websites and thus Plaintiff has failed to allege that her copyright and trademark

14    infringement claims arise out of or relate to AGHL's forum-related activities. *Id.* at 7.

15        Alibaba Defendants further contend that Plaintiff cannot establish personal jurisdiction

16    based on an alter ego theory because the Complaint fails to allege any neglect of corporate

17    formalities or day-to-day control over subsidiaries. Mot. 14–15. In addition, Alibaba Defendants

18    argue that Plaintiff's reliance on an agency theory should be rejected. *Id.* at 16. First, in their

19    view, the Ninth Circuit rejected the application of its prior agency theory test in the context of

20    specific jurisdiction in light of the Supreme Court's decision in *Diamler*. *See id.* (citing *Williams*

21    *v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017)). Second, even if some form of

22    agency theory survives *Daimler*, Alibaba Defendants argue, the Complaint fails to allege that

23    AGHL had "substantial control" over its so-called agents or that AGHL would fill the role of its

24    agents if they ceased to operate. *Id.* at 16–17.

25        Plaintiff counters that AGHL "expressly aimed conduct toward California and the U.S."

26    and thus specific jurisdiction exists. Opp'n 16. According to Plaintiff, AGHL spent large sums of

27    

28    _____

[3] Alibaba.com, AliExpress.com, and Taobao Marketplace websites are referred to as "Alibaba Websites." *See* Mot. 1.

United States District Court
Northern District of California

money "lobbying the U.S. government on intellectual property issues." *Id.* (citing Ex. 26 to Opp'n, ECF 196-26; Ex. 27 to Opp'n, ECF 196-27). Plaintiff also argues that AGHL had agents who handled various intellectual property issues. *Id.* at 16–18. Specifically, Plaintiff asserts that AGHL had a Global IP team for which Matthew Bassiur was appointed as "Vice President, Head of Global Intellectual Property Enforcement." *Id.* at 16–17. Plaintiff also contends that Daniel Dougherty and Xinghao Wang were part of the Global IP team and based in the United States. *Id.* at 17. Plaintiff claims that even if Bassiur, Dougherty, and Wang were not employees of AGHL, actions of those individuals were imputed to AGHL under an agency theory. *See id.* That said, Plaintiff makes clear that she does not rely on an alter ego or "general agent" theory. *Id.* at 18. Rather, Plaintiff contends that "the Global IP team members [were] AGHL agents." *Id.*

In addition, Plaintiff argues that AGHL established "forum contacts" by working with its subsidiaries in overseeing the development of the Alibaba Websites. Opp'n 19. For instance, Plaintiff asserts that in SEC filings AGHL states that "[w]e operate Taobao Marketplace," "[w]e operate AliExpress," and [w]e operate Alibaba.com." *Id.* (citing Ex. 3 to Opp'n 58–59, ECF 196-3). Plaintiff further contends that AGHL filed a lawsuit in the Southern District of New York stating that "Alibaba Group Holding owns common law rights" to "Alibaba" trademarks. *Id.* at 19–20 (citing Ex. 21 to Opp'n, ECF 196-21). In Plaintiff's view, the U.S. marketing activities of AGHL also demonstrate that it sought to exploit the U.S. market. *Id.* at 20. For support, Plaintiff claims that AGHL operates Alizila.com which features stories about Alibaba events in the United States. *Id.*

After reviewing the Complaint's allegations and the parties' submissions, the Court finds that Plaintiff has failed to make a *prima facie* showing that AGHL had sufficient contacts with California and the United States to establish specific jurisdiction. First, the lobbying reports (Exs. 26 and 27 to Opp'n) submitted by Plaintiff merely references intellectual property issues. The Court thus finds that the relationship between AGHL's lobbying activities and Plaintiff's claims is too tenuous. As such, the fact that AGHL lobbied the U.S. government on "intellectual property issues" is insufficient to satisfy the minimum contacts test for establishing specific jurisdiction.

Second, Plaintiff has not adequately shown that the activities of Bassiur, Dougherty, and

United States District Court
Northern District of California

Wang establish that AGHL made contacts with California or the United States.  Alibaba Defendants submitted a declaration stating that those individuals are employees of Alibaba US not AGHL.  Ho Corr. Decl. ¶¶ 10, 28–30, ECF 193.  Plaintiff contends that there is a factual dispute over which entity employs those three individuals given that Bassiur and Dougherty were identified in a June 2017 program as working for "Alibaba Group."  Opp'n 17.  She also asserts that Dougherty sent an email to Keck in December 2016 that identified him as working for "Alibaba Group" when at that time Alibaba US was known as Nimbus Development, Inc.  *Id.* (citing Ex. 29 to Opp'n, ECF 196-29).  The Court, however, finds that those references to "Alibaba Group" do not create a conflict with Alibaba Defendants' declaration providing that Bassiur, Dougherty, and Wang are employees of Alibaba US.  As provided in the numerous documents submitted by the parties, "Alibaba Group" has been used to reference the numerous Alibaba-related entities as a whole, which is a common marketing strategy.  Thus, the fact that Bassiur and Dougherty were described as "working for 'Alibaba Group'" does not contradict their claim of employment by Alibaba US.  Nor do other press releases (Ex. 15 to Opp'n, ECF 196-14) and the 2016 letter to the U.S. Trade Representative (Ex. 4 to Opp'n, ECF 196-4), which reference Alibaba Group, change this conclusion.  Because Bassiur, Dougherty, and Wang are not employees of AGHL, their activities could not have created contacts for AGHL unless an agency theory applies.[4]  But Plaintiff also fails to establish a *prima facie* case of jurisdiction under an agency theory as discussed below.

The Ninth Circuit formerly held that a subsidiary's forum contacts could be imputed to its parent if the subsidiary's services were "sufficiently important" so that the parent would perform similar services if no representative provided them.  *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017).  After *Diamler*, the "sufficiently important" formulation of the agency theory is no longer a valid basis to exercise general and specific jurisdiction.  *Williams*, 851 F.3d at 1024.  That said, the Ninth Circuit in *Williams* did not hold that an agency theory could never be applied in a specific jurisdiction analysis.  *Williams* made clear that if "some standard of agency

---

[4] Plaintiff represents that she does not rely on an alter ego theory.  Opp'n 18.

continues to be 'relevant to the existence of *specific* jurisdiction.'" *Id.* (citing *Diamler*, 134 S.Ct. at 759 n.13) (emphasis in original), the plaintiff must at least show that the "parent company . . . has the right to substantially control [the agent's] activities." *Id.* at 1024–25 (citation omitted).

Here, the Complaint fails to allege that AGHL had control over Bassiur, Dougherty, and Wang. Plaintiff points to a 2015 press release which states that Bassiur would work to "advance Alibaba Group's . . . IP rights protection efforts" and that he would "report to Michael Evans, President of Alibaba Group." Opp'n 17 (citing Ex. 15 to Opp'n). The 2016 letter to the U.S. Trade Representative makes a similar statement. *Id.* (citing Ex. 4 to Opp'n 11). However, the mere fact that Bassiur, the head of the Global IP team, reported to Evans is insufficient to establish a *prima facie* case that AGHL had "substantial[]control" over Bassiur, let alone Dougherty and Wang. *Williams*, 851 F.3d at 1024–1025 (holding that the plaintiffs did not establish specific jurisdiction under an agency theory because they failed to show control by the parent company). Accordingly, the Court finds that there is no basis for specific jurisdiction over AGHL under Plaintiff's theory that the Global IP team members were agents of AGHL.

Third, Plaintiff has failed to show "forum contacts" based on the SEC filings. Alibaba Defendants' declaration provides that AGHL "does not operate, control, or design" the Alibaba Websites or exercise any control over the content of those websites. Ho. Corr. Decl. ¶ 7. On the other hand, Plaintiffs points to a SEC filing that states that "[w]e operate Taobao Marketplace," "[w]e operate AliExpress," and [w]e operated Alibaba.com." Opp'n 19 (citing Ex. 3 to Opp'n 58–59). Plaintiff contends that the reference to "we" means that AGHL is the entity that operates the Alibaba Websites and that any factual conflict with other evidence should be resolved in her favor. *See id.* However, Plaintiff has not shown a factual dispute. The SEC filing provides that "we" means "[AGHL] and its consolidated subsidiaries and its affiliated consolidated entities." Ex. 3 to Opp'n at iii. The "we" language, when read in context, merely provides that some entities in the group including AGHL and its subsidiaries operate the Alibaba Websites not that AGHL operates each of the Alibaba Websites. *Cf. Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031 n.73 (N.D. Cal. 2018) (holding that the language "we" in the parent company's Form 10–K cannot be "reasonably read to mean that [the parent] itself operates" the stores). Thus, the SEC filing does

United States District Court
Northern District of California

1  not contradict Alibaba Defendants' declaration which states that AGHL does not operate the

2  Alibaba Websites.

3        Plaintiff also contends that AGHL operates the Alizila.com website.  Opp'n 20.  Even

4  assuming this contention is true, the Alizila.com website at best advertises the Alibaba Group's

5  various websites but does not show that AGHL operates the Alibaba Websites.  *See, e.g.*, Ex. 22 to

6  Opp'n, ECF 196-22; Ex. 23 to Opp'n, ECF 196-23.  Nor does the Alizila.com website appears to

7  promote specific products listed in the Alibaba Websites.  *See* Ex. 22 to Opp'n; Ex. 23 to Opp'n.

8  As such, the relationship between AGHL's purported operation of Alizila.com and Plaintiff's

9  infringement claims is too tenuous to support the minimum contacts test for establishing specific

10  jurisdiction.

11        As a final point, Plaintiff points out that the "Our Offices" page of alibabagroup.com

12  identifies California as the location of one of "the principal offices of Alibaba Group."  Opp'n 20

13  (citing Ex. 25 to Opp'n, ECF 196-25).  But this webpage generally refers to Alibaba Group as

14  opposed to AGHL and thus falls short of establishing AGHL's contacts with California or the

15  United States.

16        For the foregoing reasons, the Court concludes that Plaintiff has not met her burden to

17  establish a *prima facie* case of specific jurisdiction over AGHL.  Alibaba Defendants' motion to

18  dismiss AGHL for lack of personal jurisdiction is GRANTED.  Although Plaintiff had an

19  opportunity to conduct jurisdiction discovery, she has failed to provide evidence to support her

20  allegations that AGHL is subject to this Court's personal jurisdiction.  Plaintiff provides no

21  indication that additional jurisdictional discovery would cure the deficiencies identified above.  As

22  such, the Court concludes that allowing an opportunity to amend the Complaint would be futile.

23  *See Martinez v. Aero Caribbean*, 764 F.3d 1062, 1071 (9th Cir. 2014) (affirming the district

24  court's dismissal for lack of personal jurisdiction where additional jurisdictional discovery was

25  futile).  Thus, the dismissal as to AGHL for lack of personal jurisdiction is WITHOUT LEAVE

26  TO AMEND.

27       **ii.**   **TCHL**

28        As a preliminary issue, the parties dispute the scope of TCHL's operation of Taobao

Marketplace.  During the hearing, the Court granted Plaintiff's request to strike Alibaba

Defendants' new arguments pertaining to whether TCHL operates Taobao Marketplace but stated

that it will review the evidence.

Regarding TCHL's operation, Plaintiff points to a SEC filing which states that TCHL is

the "operating entity for the overseas business of Taobao Marketplace."  Ex. 3 to Opp'n 56.  On

the other hand, Alibaba Defendants rely on a declaration provided to Plaintiff in response to her

request for jurisdiction discovery.  Ex. 30 to Opp'n, ECF 195-4.  That declaration states that

TCHL "has had no involvement in the day-to-day operation, control, marketing, or design of

Taobao Marketplace, nor has it exercised any control over the content included on Taobao

Marketplace."  *Id.* ¶ 6.  It further states that TCHL was classified as the "operating entity for the

overseas business of Taobao Marketplace" because it was tasked with signing agreements for

Taobao Marketplace with "third-party entities, such as marketing contractors and vendors."  *Id.*

¶ 7 .

While Alibaba Defendants' declaration (Ex. 30 to Opp'n) qualifies TCHL's role in

operating Taobao Marketplace, it is ambiguous as to the scope of TCHL's operation and control

over Taobao Marketplace.  For instance, the declaration provides that TCHL signed agreements

with contractors and vendors.  Ex. 30 to Opp'n ¶ 7.  However, the activities of the contractors and

vendors may be attributed to TCHL as the signatory of the agreements.  The Court also notes that

the declaration states that TCHL does not process takedown notices or receive funds from U.S.

sales on Taobao Marketplace.  *Id.* ¶¶ 6, 10.  But that fact does not mean that entities other than

TCHL operate or control Taobao Marketplace.  Moreover, to the extent that Alibaba Defendants

represent that this declaration shows that TCHL is not the operating entity of Taobao Marketplace

for jurisdictional purposes, the Court finds that it creates a factual conflict with the Plaintiff's

allegations (*see e.g.*, Compl. ¶ 8) as well as Alibaba Defendants' SEC filing pertaining to TCHL's

operation of Taobao Marketplace.  At this stage, the Court must resolve a factual conflict in

Plaintiff's favor.  *Vista v. USPlabs, LLC*, No. 14-CV-00378-BLF, 2014 WL 5507648, at *1 (N.D.

Cal. Oct. 30, 2014).  Accordingly, the Court accepts as true that TCHL operates Taobao

Marketplace and evaluates the minimum contacts test based on the business of Taobao

United States District Court
Northern District of California

Marketplace as the parties have done in their briefing.

The Court first addresses whether it has specific jurisdiction over TCHL pursuant to Rule 4(k)(2).  If a defendant does not concede to jurisdiction in another state, a court may rely on Rule 4(k)(2) and evaluate the defendant's nationwide contacts to determine whether exercising personal jurisdiction over federal law claims comports with due process.  *Holland*, 485 F.3d at 461–62. Here, Plaintiff's copyright and trademark infringement claims are federal law claims and Alibaba Defendants do not contend that TCHL is subject to jurisdiction in any state.  As such, the remaining inquiry is whether this Court's exercise of personal jurisdiction under Rule 4(k)(2) would satisfy due process.  The Rule 4(k)(2) due process analysis involves the same three-part "minimum contacts" test, except "the relevant forum is the entire United States."   *LiveCareer Ltd v. Su Jia Techs. Ltd.*, No. 14-CV-03336-JST, 2015 WL 1448505, at *7 (N.D. Cal. Mar. 31, 2015) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006)).  The Court applies the "minimum contacts" test below.

### a.  Purposeful Direction

As mentioned, the parties agree that the "purposeful direction" test is applicable, and this test requires that a defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot*, 780 F.3d at 1212.  Here, Alibaba Defendants only challenge the second requirement of this three-prong test.[5]  *See* Mot. 11–12.  The first and third requirements are met because operating Taobao Marketplace website is an intentional act and displaying and selling infringing products on the website cause harm that would be suffered by Plaintiff in the United States.

The Court turns to Alibaba Defendants' arguments concerning the second requirement— whether TCHL's activities were "expressly aimed" at the United States.  According to Alibaba Defendants, the mere fact that merchants on Taobao Marketplace can ship to the United States is insufficient to show that TCHL expressly aimed at the United States.  Mot. 11.  Alibaba

---

[5] To be clear, Alibaba Defendants challenge other requirements of the broader "minimum contacts" test, including whether Plaintiff's claims arise from TCHL's contacts with the United States.  *See* Mot. 12–13.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Defendants argue that Plaintiff fails to allege that TCHL directs advertisements toward United

2  States, targets U.S. customers, or that sales to U.S. customers are integral to its business model.

3  *Id.*  In Alibaba Defendants' view, Taobao Marketplace actually impedes sales to U.S. customers

4  because the website is available in Chinese.  *Id.* at 12.  Alibaba Defendants also contend that only

5  1.6 percent of Taobao Marketplace webpage views are from the United States and that such a

6  small percentage is not enough to demonstrate that the U.S. viewers are integral to TCHL's

7  business model.  *Id.*  Alibaba Defendants further claim that less than 0.01% of total sales are

8  delivered to the United States annually.  *Id.*

9        The Court disagrees with Alibaba Defendants' arguments.  While "maintenance of a

10  passive website alone cannot satisfy the express aiming prong[,] . . . operating even a passive

11  website in conjunction with 'something more'—conduct directly targeting the forum—is

12  sufficient."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011)

13  (internal quotation marks and citation omitted).  "In determining whether a nonresident defendant

14  has done 'something more,' [the Ninth Circuit has] considered several factors," such as the

15  "interactivity of the defendant's website" and the "geographic scope of the defendant's

16  commercial ambitions."  *Id.* (citations omitted).

17        Here, the interactive commercial Taobao Marketplace website is sufficient to support a

18  *prima facie* showing that TCHL has done "something more" than maintaining a passive website

19  and expressly aimed its Taobao Marketplace activities toward the United States.

20        First, Taobao Marketplace lists prices for some products on sale—including Keck's

21  artwork—in U.S. dollars in addition to Chinese yuan.  *See* Ex. 9 to Opp'n 4, ECF 196-9; Ex. 10 to

22  Opp'n, ECF 196-10.  This evidence indicates that Taobao Marketplace targets U.S. consumers.

23  *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 598 (E.D. Va. 2003); *cf.*

24  *LiveCareer*, 2015 WL 1448505, at *8 (holding that the defendant's websites evidently targeted

25  U.S. customers where they accepted payment only in U.S. dollars).

26        The evidence also shows that users of Taobao Marketplace can register for an account

27  using an English-language registration webpage by entering a U.S. mobile phone number.  Ex. 17

28  to Opp'n, ECF 196-17.  Apparently, the English-language registration webpage sets United States

14

as the default location for entering the U.S. phone number. *See id.*; Opp'n 12. This supports a showing that Taobao Marketplace targets U.S. consumers. *See LiveCareer*, 2015 WL 1448505, at *8. Moreover, certain English webpages of Taobao Marketplace display "United States" and thus show that the website's services are directed to U.S. customers. *See* Ex. 11 to Opp'n 21–24, 27, 32, ECF 196-11.

Second, Taobao Marketplace provides guidance on which logistics carriers have dedicated staff for shipping products to the United States. Ex. 11 to Opp'n 37. Moreover, the website provides pricing for delivering products to the United States via the U.S. Postal Service. Ex. 13 to Opp'n 9, ECF 169-13; *see also* Ex. 8 to Opp'n 17, ECF 169-8; Ex. 34 to Opp'n, ECF 196-34. As such, it is evident that part of TCHL's business is aimed at selling and shipping products to the United States. The Court rejects Alibaba Defendants' argument that "procedures to ship to the United States do not constitute personal jurisdiction" (Reply 12). The fact that Taobao Marketplace provides shipping information for regions other than the United States does not mean U.S. consumers are ignored. There is sufficient evidence showing that TCHL focuses and facilitates U.S.-bound sales.

Third, U.S. customers' access to Taobao Marketplace is facilitated by the use of Content Delivery Networks (CDNs) which are located throughout the United States, including California, Colorado, Florida, Illinois, New York, Texas, and Washington. Ex. 30 to Opp'n ¶¶ 13, 15. To be sure, the CDNs temporarily store cache images but not actual product listings, and the mere location of a server may not give rise to personal jurisdiction. However, Alibaba Defendants affirmatively state that the purpose of the CDNs is to facilitate the access of Taobao Marketplace for users in the United States. *Id.* ¶¶ 13–14. As such, use of the CDNs located in the United States cannot be characterized as merely "random," "fortuitous," or "attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985). Because the evidence shows that the U.S. location of the CDNs are not fortuitous, the Court is unconvinced by Alibaba Defendants' argument that "[u]sing [CDNs] as the basis for purposeful direction would unreasonably expand personal jurisdiction" (Reply 12).

Alibaba Defendants contend that Taobao Marketplace is in Chinese and the language

United States District Court
Northern District of California

1    barrier indicates that United States is not the focus of the website.  Reply 11.  While the dominant

2    use of Chinese language in Taobao Marketplace poses a difficulty to non-Chinese speaking users,

3    there is ample evidence showing that Taobao Marketplace serves consumers in the United States.

4    The Court thus is unpersuaded by Alibaba Defendants' contention.

5      The evidence discussed above shows that TCHL has done "something more" to aim its

6    activities toward the United States.  *Mavrix*, 647 F.3d at 1229.  The Court further notes that

7    Taobao Marketplace received visits from ██████████ of unique U.S.-based IP addresses and

8    about ██████████ worth of products are sold and delivered to addresses in the United States

9    annually.  *Id.* ¶¶ 16, 21.  Alibaba Defendants attempt to downplay those numbers.  Specifically,

10   Alibaba Defendants claim that the number of visitors is inflated and represents only 1.6% of

11   worldwide views of Taobao Marketplace and the gross value of sales is less than 0.01% of total

12   sales.  Reply 10.  Because the issue is whether TCHL's activities were purposefully directed to the

13   United States, the Court is unpersuaded that the percentage of visitors or sales is the only

14   meaningful metric.  *See Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*, 2012 WL 4755041,

15   at *3 (N.D. Cal. Oct. 4, 2012) (holding that personal jurisdiction existed where total online sales to

16   the forum's customers were 0.02% of total sales and stating that "while these sales may be small,

17   it cannot be said they are not purposefully directed at California"); *Neogen Corp. v. Neo Gen

18   Screening, Inc.*, 282 F.3d 883, 891–92 (6th Cir. 2002) ("The proper test for personal jurisdiction is

19   not based on a 'percentage of business' analysis . . . but rather on whether the absolute amount of

20   business conducted . . . represents something more than 'random, fortuitous, or attenuated

21   contacts' with the [forum]." (quoting *Burger King*, 471 U.S. at 475)).  The Court finds that the

22   number of visitors and gross value of U.S. sales reflect "the geographical scope of [TCHL's]

23   commercial ambitions" and that TCHL "anticipated, desired, and achieved a substantial" United

24   States user base.  *Mavrix*, 647 F.3d at 1229–30.  It should come as no surprise to TCHL that it

25   might be forced to litigate disputes based on its U.S.-related sales activities.

26     For the foregoing reasons, the Court is satisfied that TCHL's activities were expressly

27   aimed at the United States.  As mentioned, the other two requirements in the *Calder* test are

28   satisfied.  The Court thus concludes that Plaintiff has made a *prima facie* case that TCHL

purposefully directed its activities toward the United States.

### b. Arising Out of Forum-Related Activity

Alibaba Defendants argue that the Complaint fails to allege that Plaintiff's injuries arise from TCHL's contacts with the United States.  Mot. 12.  Alibaba Defendants contend that it is unclear whether Plaintiff even alleges any infringing sales via Taobao Marketplace into the United States.  *Id.*  In Alibaba Defendants' view, "specific jurisdiction cannot rest on non-infringing sales." *Id.* at 10.  They also argue that Plaintiff fails to plead that anyone in the United States other than Plaintiff viewed the purportedly infringing products on Taobao Marketplace.  *Id.* at 13.  An infringement may occur when a protected image is displayed and viewed on a computer.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007).  It appears that on this basis Alibaba Defendants contend that the "mere availability" of infringing product listings to users of Taobao Marketplace is not enough to show that Plaintiff's claims arise out TCHL's contacts.  *See* Mot. 10 (citing *Rosen v. Terapeak, Inc.*, No. CV-15-00112, 2015 WL 12724071, at *8 (C.D. Cal. Apr. 28, 2015)).

Plaintiff counters that "an infringement claim 'arises out of' online contacts when the infringing material was posted on a website that is 'accessible to users in the forum state." Opp'n 8 (citing *Mavrix*, 647 F.3d at 1228).  On this basis, Plaintiff argues that her claims arise out of forum contacts because her copyrights and MICHEL KECK trademark were infringed on Taobao Marketplace which is accessible in the forum.  *See id.*; *see also* Compl. ¶ 265.  Plaintiff further asserts that she need not allege the sale of infringing goods to justify personal jurisdiction.  *Id.* at 9.

The Court is unpersuaded by Alibaba Defendants' arguments.  First, the unauthorized display of Plaintiff's artwork is an infringing activity.  *See, e.g.*, *Amazon.com*, 508 F.3d at 1160.  As such, as Plaintiff contends, she does not need to allege that infringing products were *sold* into the United States to show that her claims arise out of or relate to TCHL's forum related activities.

Second, in *Mavrix*, the Ninth Circuit held that the "arising out of" prong was satisfied because the plaintiff's claim arose out of the defendant's publication of photos on a website accessible to users in the forum state.  647 F.3d at 1228.  Alibaba Defendants assert that the

United States District Court
Northern District of California

"arising under" issue was not disputed in *Mavrix* and the court "assumed that anyone who visited the site saw the infringing material." Reply 8. As mentioned, they also rely on *Rosen* to argue that Plaintiff must allege that someone from the United States viewed infringing listings on Taobao Marketplace. Mot. 10; Reply 7–8 (citing *Rosen*, 2015 WL 12724071, at *8). Even assuming Alibaba Defendants are correct, they have not rebutted Plaintiff's contention that her claims arise out of TCHL's forum contacts.

The Ninth Circuit in *Mavrix* did not explicitly state that it assumed that anyone from the forum viewed the infringing material when accessing the defendant's website. In any case, this Court need not determine whether the holding in *Mavrix* requires that Plaintiff must allege that someone from the United States viewed her artwork (and thereby caused infringement). This is because the evidence shows that Plaintiff's artwork listed on Taobao Marketplace was actually viewed from the United States (Ex. 8 to Opp'n 8–9, ECF 196-8). Alibaba Defendants contend that those views were made by Plaintiff or her agents and thus were "manufactured" and cannot support an exercise of personal jurisdiction. Reply 13. However, as Plaintiff argues (Opp'n 10), Alibaba Defendants point to no evidence in support of this contention. To the extent that Alibaba Defendants raise a factual dispute, that conflict must be resolved in favor of Plaintiff. *Vista*, 2014 WL 55077648, at *1. Accordingly, the Court finds that Plaintiff has made a *prima facie* showing that her claims arise out of TCHL's operation of Taobao Marketplace which was purposefully directed toward the United States.

### c. Reasonableness

Because Plaintiff satisfies the first two prongs of the specific jurisdiction test, the burden shifts to Alibaba Defendants to present a "compelling case" that the exercise of jurisdiction would be unreasonable. *CollegeSource*, 653 F.3d at 1076. Alibaba Defendants, however, provide no argument why this Court's exercise of personal jurisdiction over TCHL would be unreasonable and thus have failed to meet their burden.

### d. Conclusion

For the above reasons, the Court concludes that Plaintiff has made a *prima facie* showing that it has specific jurisdiction over TCHL based on nationwide contacts pursuant to Rule 4(k)(2).

The Court need not further determine whether it has jurisdiction over TCHL based on California contacts because Alibaba Defendants have not suggested that TCHL is subject to jurisdiction in any other U.S. state.  Alibaba Defendants' motion to dismiss TCHL for lack of personal jurisdiction is DENIED.

### B.    Dismissal Based on Failure to State a Claim

Alibaba Defendants move to dismiss the Complaint against AGHL, Alibaba.com, Inc., and Alibaba US pursuant to Rule 12(b)(6).  Mot. 17.  Alibaba Defendants define those three entities as "Non-Operating Defendants."  *Id.* at 3.

Plaintiff alleges claims for contributory copyright infringement (claim 2), vicarious copyright infringement (claim 3), and contributory trademark infringement[6] (claims 7 and 8) against all Alibaba Defendants.  Because AGHL is dismissed for lack of personal jurisdiction, the issue now presented in Alibaba Defendants' Rule 12(b)(6) motion is whether Plaintiff's claims against the remaining Non-Operating Defendants, Alibaba.com, Inc. and Alibaba US, should be dismissed.  Thus, the Court addresses the parties' arguments with respect to Alibaba.com, Inc. and Alibaba US.

As a preliminary issue, Alibaba Defendants contend that Plaintiff must allege unlawful conduct with respect to each defendant.  *See* Mot. 17–18.  Alibaba Defendants contend that the Complaint impermissibly contains numerous allegations which group these defendants as "Alibaba" and pleads that they provide services for the Alibaba websites and have ability to remove listings on those websites (*see, e.g.*, Compl. ¶¶ 185–87, 197).  Plaintiff responds that Alibaba Defendants have called themselves "Alibaba" and that she is not required to allege how each defendant infringed the plaintiff's copyright.  Opp'n 22.

To be sure, allegations that lump all defendants as a group may satisfy the pleading standards under some circumstances.  But this does not mean that Plaintiff may always rely on allegations that are so generalized.  Federal Rule of Civil Procedure 8 requires that a pleading

---

[6] The parties do not distinguish between claim 7 (contributory trademark infringement) and claim 8 (contributory trademark infringement and false designation of origin under 15 U.S.C. § 1125(a)) in their briefing.  As such, the Court refers to both claims as the "contributory trademark infringement" claim.

United States District Court
Northern District of California

must be sufficient to give a defendant "fair notice." *Twombly*, 550 U.S. at 555.  Here, as pled, the Complaint's general reference to Alibaba without more does not give sufficient notice whether all Alibaba Defendants or only specific entities engaged in the purported conduct.  Moreover, it is not plausible that all Alibaba Defendants engaged in the same activities alleged in the Complaint.  As such, the Court finds that the Complaint's allegations fail to give Alibaba.com, Inc. and Alibaba US "fair notice of what the . . . claim is and the grounds upon which it rests."  *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Thus, the Court rejects Plaintiff's argument that the Complaint adequately pleads the elements of contributory and vicarious infringement claims against Alibaba.com, Inc. and Alibaba US based on allegations that generally reference "Alibaba" (Opp'n 22).

The Court next turns to the parties' specific arguments concerning the contributory copyright infringement, vicarious copyright infringement, and contributory trademark infringement claims.

### i.    Contributory Copyright Infringement Claim

Contributory copyright infringement requires a showing of (1) knowledge of another's infringement and either a material contribution to or inducement of that infringement.  *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017) (citation omitted).

Alibaba Defendants argue that the Complaint fails to allege that Alibaba.com, Inc. and Alibaba US knew about the infringement of Plaintiff's copyrights.  Mot. 18.  They also assert that "[p]roviding marketing and technical support services to a company that operates" a website where the infringement occurs does not "constitute a material contribution to the infringement." *Id.*  In addition, Alibaba Defendants claim that the Complaint does not allege that Alibaba.com, Inc. and Alibaba US engaged in inducement of the infringement.  *Id.* at 19.

Plaintiff responds that the Complaint pleads that Alibaba US knew of the purported infringing activity because she sent emails to Daniel Dougherty, Matthew Bassiur, and Xinghao Wang regarding infringement of her artwork.  Mot. 24 (citing Compl. ¶¶ 253–54).  According to Plaintiff, Alibaba US would be liable for contributory copyright infringement because its "provision of maintenance, support, marketing, and investment services" for the Alibaba Websites

1    materially contributed to the infringing activity.  *Id.* (citing Compl. ¶¶ 4, 102).  She provides no

2    specific arguments in support of her claims against Alibaba.com, Inc.

3         The Court finds that the Complaint fails to plead a claim for contributory copyright

4    infringement against Alibaba.com, Inc. and Alibaba US.  First, the Complaint alleges that

5    Dougherty was the senior director for "Alibaba Group's global IP enforcement team" (Compl.

6    ¶ 227), Bassiur was "Alibaba's head of global intellectual property enforcement" (*id.* ¶ 225), and

7    Wang was an "Alibaba" employee (*id.* ¶ 215).  Those allegations are insufficient to show that

8    Dougherty, Bassiur, or Wang were employees of Alibaba.com, Inc. and Alibaba US.  Thus,

9    Plaintiff's allegations that she sent emails to those individuals cannot support a plausible inference

10   that Alibaba.com, Inc. and Alibaba US knew about the infringement of Plaintiff's copyrights.

11        Second, the Complaint pleads that Alibaba US provided services related to the

12   "development and maintenance of online shopping platforms" as well as "marketing, investment,

13   and R&D support services."  Compl. ¶¶ 4, 102.  Even if those allegations are read to mean that

14   Alibaba US provided the listed services for the Alibaba Websites, Plaintiff fails to plead the

15   second element of her contributory copyright infringement claim.  "[L]iability for contributory

16   infringement requires *substantial* participation in a specific act of direct infringement."  *In re*

17   *Napster, Inc.Copyright Litig.*, No. C 00-1369 MHP, 2001 WL 36593841, at *2 (N.D. Cal. July 9,

18   2001) (emphasis added); *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 797 (9th

19   Cir. 2007) (allegations showing that a defendant "substantially assist[ed]" users to download

20   infringing images satisfied the pleading standard while allegations concerning services for

21   processing online payments did not).  Here, while the Complaint's allegations show that Alibaba

22   US provided some services for the Alibaba Websites, they lack factual content that would support

23   a reasonable inference that those services "substantially assist[ed]" the purported infringing

24   activities.  *Visa*, 494 F.3d at 788.

25        Third, the Complaint alleges that Alibaba.com, Inc. "promotes the brand awareness of the

26   Alibaba Platforms" through various marketing activities.  Compl. ¶ 3.  This allegation does not

27   show that Alibaba.com, Inc. substantially assisted the purported infringement that occurred on the

28   Alibaba Websites.  In fact, Plaintiff provides no argument that brand promotion of the Alibaba

United States District Court
Northern District of California

1    Websites satisfies the material contribution element.

2          Accordingly, Alibaba Defendants' motion to dismiss Alibaba.com, Inc. and Alibaba US

3    for failure to state a claim for contributory copyright infringement is GRANTED WITH LEAVE

4    TO AMEND.

5                    **ii.    Vicarious Copyright Infringement Claim**

6          "To prevail on a claim for vicarious [copyright] infringement, a plaintiff must prove the

7    defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial

8    interest in the infringing activity." *Giganews*, 847 F.3d at 673 (internal quotation marks and

9    citation omitted).

10         Alibaba Defendants argue that the Complaint fails to plead that Alibaba.com, Inc. and

11   Alibaba US "had the right or ability to remove infringing listings from websites operated by other

12   Alibaba entities." Mot. 19. They also assert that the Complaint does not allege that Alibaba.com,

13   Inc. and Alibaba US received direct financial benefit from the infringement. *Id.* According to

14   Alibaba Defendants, users of the Alibaba Websites are not customers of those two defendants. *Id.*

15         Plaintiff has a different view. Plaintiff points out that the Complaint alleges that Wang, an

16   "Alibaba" employee, told her that "we will process" her takedown request. Opp'n 23 (citing

17   Compl. ¶¶ 215, 224). She further contends that Alibaba Defendants submitted a declaration

18   confirming that Wang is an employee of Alibaba US. *Id.* (citing Ho Corr. Decl. ¶ 30). However,

19   as Plaintiff acknowledges (*see id.* at 21), this Court cannot consider evidence outside the pleadings

20   without converting a Rule 12(b)(6) motion into one for summary judgment unless an exception

21   applies. *Ritchie*, 342 F.3d at 907. Only a few exceptions apply: A court may consider (1)

22   documents attached to the complaint; (2) documents incorporated by reference in the complaint;

23   and (3) matter that is judicially noticeable under Federal Rule of Evidence 201. *See id.* at 907–08.

24   Alibaba Defendants' declaration (Ho Corr. Decl.) does not fall under any exception. As such, the

25   Court cannot consider the declaration's statement that Wang is an employee of Alibaba US.

26   Instead, the Court must view the Complaint's allegation that Wang was an "Alibaba" employee.

27   This allegation is insufficient to support a reasonable inference that Wang was employed at

28   Alibaba US as opposed another Alibaba entity. As such, the Court finds that the Complaint fails

1  to plausibly allege that Alibaba US had the ability to remove infringing listings,[7] let alone "the

2  right and ability to supervise the infringing conduct."  *Giganews*, 847 F.3d at 673.

3  Furthermore, Plaintiff asserts that Alibaba US has "an interest in commissions and in an

4  increased U.S. [user base]" due to its close relationship with other Alibaba entities.  Opp'n 23.

5  However, this assertion is not pled in the Complaint and thus the Court cannot consider it

6  regardless of whether it is adequate to support a plausible claim.  Accordingly, the Court

7  concludes that the Complaint fails to allege that Alibaba US had "a direct financial interest in the

8  infringing activity."  *Giganews*, 847 F.3d at 673.

9  Plaintiff provides no argument with respect to Alibaba.com, Inc.  For similar reasons

10  discussed above, the Court finds that the Complaint does not plead a plausible claim for vicarious

11  copyright infringement against Alibaba.com, Inc.

12  Accordingly, Alibaba Defendants' motion to dismiss Alibaba.com, Inc. and Alibaba US

13  for failure to state a claim for vicarious copyright infringement is GRANTED WITH LEAVE TO

14  AMEND.

15  **iii.    Contributory Trademark Infringement Claim**

16  "To be liable for contributory trademark infringement, a defendant must have (1)

17  intentionally induced the primary infringer to infringe, or (2) continued to supply an infringing

18  product to an infringer with knowledge that the infringer is mislabeling the particular product

19  supplied."  *Visa*, 494 F.3d at 807 (internal quotation marks and citation omitted).

20  Alibaba Defendants contend that the deficiencies in Plaintiff's contributory copyright

21  infringement claim mean she also failed to plead the contributory trademark infringement claim

22  because the standard for the latter is more stringent than the former.  Mot. 19 (citing *Routt v.*

23  *Amazon.com, Inc.*, 584 F. App'x 713, 716 (9th Cir. 2014)).

24  Plaintiff responds that she need only allege that "the defendants provided services to

25  someone they knew or had reason to know was engaging in trademark infringement" and that "the

26

27  ───────────────

28  [7] Due to this deficiency, the Court need not determine whether the ability to remove infringing
listings satisfy the "right and ability to supervise" element of a vicarious copyright infringement
claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    defendants could control or monitor the instrumentality being used for the infringing activity."

2    Opp'n 24 (citing *Louis Vuitton Malletier, S.A. v. Akanoc Sols.*, Inc., 658 F.3d 936, 942 (9th Cir.

3    2011)).  Plaintiff claims that she met this standard by alleging that she told Alibaba US of the

4    infringement of the MICHEL KECK trademark and that Alibaba US could remove infringing

5    material from the Alibaba Websites.  *See id.*

6    　　　　The Court is unpersuaded by Plaintiff's arguments as the Complaint fails to plead a claim

7    even under the standard articulated by Plaintiff.  Here, the Complaint alleges only that Plaintiff

8    notified "Alibaba Defendants" (as opposed to Alibaba.com, Inc. or Alibaba US) about her

9    trademark by sending takedown requests.  Compl. ¶ 265.  As discussed earlier, that allegation

10   fails to support a reasonable inference that Alibaba.com, Inc. and Alibaba US knew about the

11   purported infringement.

12   　　　　Moreover, the Complaint pleads that "Alibaba" had the right to control and monitor

13   infringing activity on the Alibaba Websites.  *See, e.g.*, Compl. ¶¶ 281–84.  Because the Complaint

14   only generally refers to Alibaba, the Court finds that it does not contain factual allegations that

15   allow a reasonable inference to be drawn that Alibaba.com, Inc. or Alibaba US had "[d]irect

16   control and monitoring of the instrumentality used by a third party to infringe [Plaintiff's] mark."

17   *Visa*, 494 F.3d at 807 (citation omitted) (alteration in original); *see also Akanoc Sols.*, 658 F.3d at

18   942.

19   　　　　For the above reasons, Alibaba Defendants' motion to dismiss Alibaba.com, Inc. and

20   Alibaba US for failure to state a claim for contributory trademark infringement is GRANTED

21   WITH LEAVE TO AMEND.

22   　　　　**C.   Fourth Claim for Declaratory Judgment and Fifth Claim for Injunctive Relief**

23   　　　　The fourth claim seeks declaratory judgment that Alibaba Defendants are not entitled to a

24   safe harbor defense provided by the Digital Millennium Copyright Act ("DMCA").  Compl.

25   ¶¶ 323–26.  The fifth claim asserts that Plaintiff and the purported class are entitled to injunctive

26   relief.  Compl. ¶¶ 327–29.  Alibaba Defendants argue that the fourth claim is improper because

27   they have not asserted an affirmative defense based on DMCA's safe harbor provision and that the

28   fifth claim for injunctive relief is not a cause of action.  Mot. 20–22.  On this basis, Alibaba

Defendant seeks to dismiss the fourth and fifth claims.  *Id.*

The Court agrees with Alibaba Defendants' arguments.  In fact, during the hearing, Plaintiff conceded that the fourth and fifth claims may be dismissed.  Hearing Tr. 31:19–23. Accordingly, Alibaba Defendants' motion to dismiss the fourth and fifth claims is GRANTED. This dismissal is without prejudice to Plaintiff's ability to seek injunctive relief or challenge a DMCA safe harbor defense later in this action.

## V.    CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Alibaba Defendants' motion to dismiss AGHL for lack of personal jurisdiction is GRANTED WITHOUT LEAVE TO AMEND.

(2) Alibaba Defendants' motion to dismiss TCHL for lack of personal jurisdiction is DENIED.

(3) Alibaba Defendants' motion to dismiss Alibaba.com, Inc. and Alibaba US for failure to state a claim for contributory copyright infringement is GRANTED WITH LEAVE TO AMEND.

(4) Alibaba Defendants' motion to dismiss Alibaba.com, Inc. and Alibaba US for failure to state a claim for vicarious copyright infringement is GRANTED WITH LEAVE TO AMEND.

(5) Alibaba Defendants' motion to dismiss Alibaba.com, Inc. and Alibaba US for failure to state a claim for contributory trademark infringement is GRANTED WITH LEAVE TO AMEND.

(6) Alibaba Defendants' motion to dismiss AGHL for failure to state a claim is TERMINATED as moot as AGHL is dismissed for lack of personal jurisdiction.

(7) Alibaba Defendants' motion to dismiss the fourth and fifth claims is GRANTED without prejudice to Plaintiff's ability to seek injunctive relief or challenge a DMCA safe harbor defense later in this action.

(8) Plaintiff may file an amended complaint **within twenty-one (21) days** of the date of

United States District Court
Northern District of California

1　　　　　this order.

2　　　　**IT IS SO ORDERED.**

3

4　Dated: August 30, 2018

5

6　BETH LABSON FREEMAN
　　United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California