**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MICHEL KECK,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA.COM HONG KONG LTD., et al.,<br><br>Defendants. | Case No. 17-cv-05672-BLF<br><br>**ORDER DENYING ALIBABA DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>[Re: ECF 292] |

Plaintiff Michel Keck brings this copyright and trademark infringement action against Alibaba.com Hong Kong Ltd. ("Alibaba HK"), Taobao China Holding Ltd. ("TCHL"), Zhejiang Taobao Network Co., Ltd. ("Zhejiang Taobao") (collectively, the "Alibaba Defendants") and numerous Chinese merchants. *See generally* First Amended Complaint ("FAC"), ECF 286. Before the Court is Alibaba Defendants' Motion for Partial Judgment on the Pleadings ("Motion"). Motion, ECF 292. Specifically, Defendants[1] move to dismiss Count III of the FAC for failure to sufficiently allege the requisite elements of a vicarious copyright infringement claim. *See* Motion at 1. The Court previously ruled that Defendants' Motion would be determined without oral argument. *See* ECF 299. For the reasons set forth below, the Court hereby DENIES Defendants' Motion for Partial Judgment on the Pleadings.

**I. BACKGROUND**

Plaintiff is a professional artist who resides in Indiana and sells her artwork from her own website and through authorized dealers. FAC ¶¶ 1, 180. She alleges that her artwork was reproduced and sold on websites operated by Alibaba Defendants—e.g., Alibaba.com,

---

[1] In this Order "Defendants" refers to the Alibaba Defendants.

AliExpress.com, Taobao Marketplace, Tmall, and 1688.com—by Chinese merchants without her authorization. *See, e.g.*, *id.* ¶¶ 149–156, 190–201. Plaintiff alleges that she sent numerous notices requesting that the infringing products be taken down from the virtual online stores. *See, e.g.*, *id.* ¶¶ 264–74, 278–282. Thereafter, on October 2, 2017, Plaintiff filed this lawsuit against Alibaba Defendants and numerous Chinese merchants ("Defendant Stores").

Plaintiff's original complaint included Defendants Alibaba.com, Inc., Alibaba Group (U.S.), Inc., Alibaba Group Holding, Ltd. ("AGHL"), and Alipay US, Inc. On February 7, 2018, Keck dismissed Defendant Alipay US, Inc. without prejudice. ECF 165. On August 30, 2018, the Court dismissed Defendant AGHL for lack of personal jurisdiction without leave to amend and dismissed Plaintiff's claim for vicarious copyright infringement against Defendants Alibaba.com, Inc. and Alibaba Group (U.S.), Inc. with leave to amend, among other rulings. *See* Order Granting in Part and Denying in Part Alibaba Defendants' Motion to Dismiss at 25, ECF 277.

Plaintiff subsequently filed her FAC amending, *inter alia*, her vicarious copyright infringement claim. The FAC asserts the following five claims:

(1) Direct copyright infringement (against Defendant Stores);

(2) Contributory copyright infringement (against Alibaba Defendants);

(3) Vicarious copyright infringement (against Alibaba Defendants);

(4) Contributory trademark infringement (against Alibaba Defendants); and

(5) Contributory trademark infringement and false designation of origin under 15 U.S.C. § 1125(a) (against Alibaba Defendants).

FAC ¶¶ 373–401. The second and third claims are class claims. The instant Motion for Partial Judgment on the Pleadings as to Count III followed. The Court's prior order at ECF 277 did not address vicarious copyright infringement as to Defendants Alibaba HK, TCHL, or Zhejiang Taobao (the "Alibaba Defendants" in Plaintiff's FAC, who bring the instant Motion).

Additional background[2] not relevant to the instant Motion is not restated here.

---

[2] For additional background, see the Court's prior orders at ECF 269 and ECF 277.

2

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and the same legal standard applies to both. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Thus, when considering a Rule 12(c) motion, a district court "must accept the facts as pled by the nonmovant." *Id.* at 1053. The district court then must apply the *Iqbal* standard to determine "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Cafasso*, 637 F.3d at 1054 & n.4 (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

A district court generally may not consider materials outside the pleadings in deciding a motion under either Rule 12(b)(6) or Rule 12(c), and if such materials are presented to the court and not excluded, the motion must be treated as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). A district court may, however, consider the following materials without converting a Rule 12(c) motion to a Rule 56 motion: "(1) exhibits to the nonmoving party's pleading, (2) documents that are referred to in the non-moving party's pleading, or (3) facts that are included in materials that can be judicially noticed." *Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 772 (9th Cir. 2007).

## III. DISCUSSION

Defendants argue that Plaintiff's vicarious copyright infringement claim (Count III of the FAC) should be dismissed for failure to sufficiently allege one or both necessary elements of such a claim. *See* Motion at 1–3. Plaintiff counters that "Defendants cannot advance a serious argument that, under existing precedent, Keck failed to allege facts supporting the elements of vicarious [copyright] infringement." Opp'n at 2, ECF 296.

Vicarious copyright liability is an "outgrowth" of respondeat superior. *See A&M Records, Inc. v. Napster Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001) (quoting and citing *Fonovisa, Inc. v.*

*Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996)). "[T]o succeed in imposing vicarious liability, a plaintiff must establish that [1] the defendant exercises the requisite control over the direct infringer and that [2] the defendant derives a direct financial benefit from the direct infringement." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)). Here, for the reasons discussed below, the Court finds that Plaintiff's FAC contains sufficient factual allegations to support a vicarious copyright infringement claim against Defendants. Each element is discussed in turn, followed by a short conclusion.

### A. Requisite Control

"A vicarious infringer 'exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.'" *Williams v. Gaye*, 895 F.3d 1106, 1132 (9th Cir. 2018) (quoting *Amazon.com*, 508 F.3d at 1173).

First, Defendants argue that Keck does not plausibly allege that Defendants had the right to stop or limit the infringing conduct by the Chinese merchants who use Defendants' websites because the merchants are "independent actors whose product listings are not [] materially shaped by the Alibaba Defendants." *See* Motion at 12. Defendants acknowledge that they have the capacity to "remove infringing listings and penalize the sellers," *see* Motion at 11, but contend that this "prong of vicarious liability requires more than simply the capacity of an online service provider to remove infringing material from the system," *see* Motion at 10. Defendants cite *Amazon.com*, 508 F.3d at 1172–75 for this proposition. *See* Motion at 10.

In *Amazon.com*, the Ninth Circuit evaluated plaintiff Perfect 10's contention that Google was vicariously liable for third-party websites' reproduction, display, and distribution of unauthorized copies of Perfect 10's images on the internet. *See Amazon.com*, 508 F.3d at 1173. In reversing the district court's grant of a preliminary injunction, the Ninth Circuit held that Perfect 10 did not demonstrate a likelihood of success in establishing that Google had the right and ability to stop or limit the infringing activities of the third-party websites. *See id.* at 1173. In *Amazon.com*, some third-party websites participated in Google's AdSense program, which

4

matches online content with ads relevant to that content. *See id.* at 1156, 1166. The Ninth Circuit noted that although Google had "the right to monitor and terminate partnerships with [third-party websites participating in AdSense] that violate others' copyrights," Google "[could] not stop any of the third-party websites from [directly infringing] Perfect 10's images because that infringing conduct takes place on the third-party websites." *Id.* at 1173–74.

The Ninth Circuit then contrasted Google's capabilities to those of the swap meet operators in *Fonovisa*, 76 F.3d at 262–63. In *Fonovisa*, the Ninth Circuit found that a swap meet operator's "broad contract with its vendors" was sufficient to satisfy the control requirement because it "had the right to terminate vendors for any reason whatsoever and through that right had the ability to control the activities of vendors on the premises." *Id.* at 263. Unlike *Fonovisa*, Google did not have "contracts with third-party websites that empower Google to stop or limit them from reproducing, displaying, and distributing infringing copies of Perfect 10's images on the Internet." *Amazon.com*, 508 F.3d at 1173.

In addition, the Ninth Circuit contrasted Google with Napster in *A&M Records*, 239 F.3d at 1011. "Because Napster had a closed system requiring user registration, and could terminate its users' accounts and block their access to the Napster system, Napster had the right and ability to prevent its users from engaging in the infringing activity of uploading file names and downloading Napster users' music files through the Napster system. By contrast, Google cannot stop any of the third-party websites from reproducing, displaying, and distributing unauthorized copies of Perfect 10's images because that infringing conduct takes place on the third-party websites." *Amazon.com*, 508 F.3d at 1174 (internal quotations and citations omitted).

Here, although a close call, the Defendants are more similarly situated to the swap meet operator and Napster than to Google. Crucially, Plaintiff alleges that Defendants' websites are online marketplaces that constitute "a large ecosystem for online and mobile commerce" over which Defendants "exercise high levels of control." *See* FAC ¶¶ 11, 133, 151, 253. Plaintiff further alleges that Defendants are "involved in the day-to-day operation, control, marketing, and design of [the marketplaces]." *Id.* ¶ 6; *see also id.* ¶¶ 253, 346–49. For example, Plaintiff specifically alleges that "the Alibaba Defendants provide marketing services to merchants who

5

operate on Taobao, Alibaba.com and AliExpress, provide guidance for the layout of the merchants' virtual stores, and facilitate transactions between merchants and buyers." *Id.* at ¶ 346. Thus, unlike in *Amazon.com*, the alleged direct infringement here takes place not "on the internet" writ large but instead on Defendants' websites/marketplaces. Moreover, Plaintiff alleges that Defendants have the right and ability to terminate the membership of merchants who repeatedly infringe, the right to remove, modify, or reject unlawful content on the websites/marketplaces, and the discretionary right to suspend access to the websites/marketplaces. *See* FAC ¶¶ 248–251. In other words, where Google had the right to terminate the AdSense partnership—which would not have stopped direct infringement by third parties—here the Defendants could have ended the alleged direct infringement on their own websites/marketplaces by terminating or suspending the merchants' memberships. *See Amazon.com*, 508 F.3d at 1174; *see also Routt v. Amazon.com, Inc.*, 584 Fed. Appx. 713, 714–15 (9th Cir. 2014) ("A defendant has control over a third party's infringing conduct when the defendant can directly put an end to that conduct.").

Second, Defendants argue that Plaintiff does not sufficiently allege that Defendants have "the practical ability to stop or limit the [alleged] infringement." *See* Motion at 13. Defendants acknowledge that Plaintiff alleges that Defendants have deployed technology to identify and take down "millions of postings that infringed third parties' intellectual property rights," but contend that these measures "do not reflect an ability *to prevent sellers from uploading infringing listings in the first place.*" *See id.* at 13 (emphasis in original). However, as Plaintiff points out, *see* Opp'n at 9, a "practical ability" to stop or limit infringement does not require antecedent prevention. Instead, the question is whether Defendants have "the practical ability **to police** the infringing activities of third-part[ies]." *See Amazon.com*, 508 F.3d at 1174 (emphasis added). Indeed, "[t]o escape imposition of vicarious liability, the reserved right to police must be exercised to its fullest extent. Turning a blind eye to detectable acts of infringement for the sake of profit gives rise to liability." *See A&M Records*, 239 F.3d at 1023.

Here, Plaintiff has adequately alleged that Defendants failed to police their websites/marketplaces to the fullest extent, thus permitting detectable acts of infringement to occur. For example, Plaintiff alleges that Defendants have technology to proactively identify

6

infringing material, *see, e.g.*, FAC ¶¶ 246, 252, and that Plaintiff has repeatedly notified Defendants of infringing material, *see, e.g.*, *id.* ¶¶ 264–73, but that Defendants nonetheless failed to remove the infringing material, *see, e.g.*, *id.* ¶¶ 221, 256, 274–86, 332. As another example, Plaintiff alleges that so-called "repeat offenders"—merchants identified as having previously infringed—were permitted to continue to use Defendants' websites/marketplaces despite Defendants' knowledge of the merchants' infringing activity. *See id.* ¶¶ 337–341. Plaintiff also alleges that Defendants have failed to maintain adequate records of infringing activity, *see id.* ¶ 342, which the Court may reasonably infer hinders Defendants' ability to police their system. Taken as a whole, the Court finds sufficient allegations of Defendants' practical ability to stop or limit infringement and failure to police their websites/marketplaces "to [the] fullest extent." *See A&M Records*, 239 F.3d at 1023.

In sum, Plaintiff sufficiently alleges "a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Williams*, 895 F.3d at 1132.

### B. Direct Financial Benefit

The Court next turns to the second element of vicarious copyright infringement, whether "the defendant derives a direct financial benefit from the direct infringement." *Amazon.com, Inc.*, 508 F.3d at 1173. "Financial benefit exists where the availability of infringing material acts as a draw for customers." *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004) (internal quotation and citations omitted). "[T]he size of the 'draw' relative to a defendant's overall business is immaterial. Indeed, [t]he essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir.), *cert. denied*, 138 S. Ct. 504, (2017) (internal quotation and citation omitted). "There is no requirement that the draw be substantial." *Ellison*, 357 F.3d at 1079.

Defendants argue that "Plaintiff's allegations do not establish a direct financial benefit from the alleged direct infringement in the manner [] require[d]." *See* Motion at 16. At the pleading stage, the Court disagrees. The factual matter in the FAC, accepted as true, *see Iqbal*,

7

556 U.S. at 678, supports the inference that the allegedly infringing material draws customers to Defendants' websites/marketplaces resulting in benefits to Defendants they would not otherwise receive. For example, Plaintiff alleges that Defendants receive commissions from the sale of unauthorized copies of Keck's artwork and that the unauthorized display, reproduction and sale of copyrighted works owned by Keck and others draws visitors to Defendants' platforms. *See, e.g.*, FAC ¶¶ 257–59. As another example, Plaintiff alleges that Defendants have knowledge that goods are being sold on their platforms in violation of third parties' copyright and trademark rights, that Defendants have developed the reputation as marketplaces for such "[k]nock-off goods," and that Defendants monetize increased traffic due to those goods. *See, e.g.*, FAC ¶¶ 161–63. These allegations adequately support Plaintiff's assertion of a causal link between the merchants' allegedly infringing activities and financial benefit to Defendants.

Defendants cite *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004), for the proposition that no causal relationship exists here. *See* Motion at 15–16. In *Ellison*, the question before the court was "whether there [was] a triable issue of a material fact regarding whether AOL received a direct financial benefit from the copyright infringement." 357 F.3d at 1079. The court concluded that plaintiff had not offered enough evidence for a reasonable juror to find a direct financial benefit. *Id.* Here, at the pleading stage, the Court is not asked whether Plaintiff has sufficient evidence to create a triable issue of material fact. Instead, the question is whether Plaintiff plausibly alleged a direct financial benefit to Defendants due to the alleged infringing activity, which Plaintiff has.

**C. Conclusion**

As stated above, the Court finds that Plaintiff has sufficiently alleged vicarious copyright infringement. For this claim, full application of the law to the facts would require a developed record. The Court has reviewed Defendants' arguments in full and finds certain arguments compelling but better suited for summary judgment or trial on a developed record.

//

//

//

8

## IV. ORDER

For the foregoing reasons, Defendants' Motion for Partial Judgment on the Pleadings at ECF 292 is DENIED.

**IT IS SO ORDERED.**

Dated: February 21, 2019

/s/ Beth Labson Freeman
BETH LABSON FREEMAN
United States District Judge